MARY E. GRAHAM *vs.* MARY E. STANTON, administratrix.

Suffolk. November 12, 1900. — January 2, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

If one takes a child into his household under the name of daughter and falsely represents to her that he has legally adopted her, and makes a contract to pay her for her services performed in his household, the false representation is not such a concealment of a cause of action, as to permit the child to recover on the contract in an action otherwise barred by the statute of limitations.

If one takes a child into his household under the name of daughter and falsely represents to her that he has legally adopted her, and thereby induces her to render services in household work under the belief that she is his adopted daughter, no implied contract is created, and the child's remedy is in an action of tort for the deceit.

Although an agreement to render services is a good consideration for a promise to pay for past services as well as those about to be rendered, there was no evidence of such a new contract to pay for past services in this case.

CONTRACT, to recover for services rendered by the plaintiff to John Stanton, the defendant's intestate. Writ dated December 24, 1896. The declaration contained three counts.

The first count was upon an account annexed. The first four items were for services rendered from April 23, 1870, to April 18, 1884, amounting to $4,592.80. The next three items were for services from 1890 to November 26, 1893, including one charge for board, and amounting to $114.75. The remaining items were credits for board and clothing furnished to the plaintiff from April 23, 1870, to April 18, 1884, amounting to $1,615.50, leaving the balance sued for $3,092.05.

The second count alleged the making of a specific contract, on or about the first day of July, 1892, by which the defendant's intestate agreed, in consideration of future services to be rendered by the plaintiff, to pay her for past services as well as for services to be rendered, and that the plaintiff rendered future services in accordance therewith, and that the defendant owes her the sum of $3,092.05, according to said account annexed.

The third count alleged that the defendant's intestate, on or about the twentieth day of April, 1870, the plaintiff then being a child of eight years of age, agreed to adopt her in accordance with the laws of the Commonwealth, and thereupon and thereafter at various times assured her that he had so adopted her, and that the services set forth in the plaintiff's declaration were rendered by her in the belief that said representations were true; that the same were false, and that she was deceived thereby, and that in consequence thereof she was entitled to recover for said services, and that the defendant owes her the sum of $3,092.05, according to said account annexed.

The defendant answered, making a general denial, and pleading payment and the statute of limitations.

At the trial in the Superior Court, before *Bishop,* J., it appeared that John Stanton, the defendant's intestate, was superintendent of a cemetery; that in 1870 he and his wife, being about fifty years of age, having no children and keeping no servants, took the plaintiff, then eight years old, from an orphan asylum to live with them; that the plaintiff was treated as an adopted daughter, went to school until 1875, and before and after that year performed work of various kinds in the household; that on July 8, 1880, the plaintiff, being then eighteen years old, married, but until April 18, 1884, continued to live with Stanton and his wife, performing the same work as before, her husband living there also and paying board to Stanton. On April 18, 1884, the plaintiff moved to her own house near by, built on land which Stanton had given her. In July, 1892, Stanton's wife died. In November, 1893, Stanton married again, and on June 27, 1895, died intestate. Stanton never adopted the plaintiff. He treated her as his adopted daughter, and spoke of her and introduced her as such daughter, and at various times spoke of providing for her. The plaintiff testified:

"I found out I was not really adopted, second day after Mr. Stanton died, about June 29, 1895. In school was known as Mary Elizabeth Stanton. Mr. Stanton had me baptized by a clergyman. He always called me 'Liz,' or 'Lizzie,' and I called him uncle. I felt I was practically a child of the family, and from 1870 down to the time of my marriage Mr. and Mrs. Stanton acted towards me as they would towards a daughter, and I acted as a daughter would towards parents. There was no book account between us and no bills. I was married from Mr. Stanton's house and he provided wedding garments for me. Mr. Stanton gave me the lot after my first child was born."

The plaintiff also testified as follows:

"When I was taking care of him [i. e. Stanton during an illness in 1892 or 1893] I know he said I should look after him and he would look after me. He would pay me for what I had done in the past and present. A day or two after the first Mrs. Stanton had died, he was over to the house, spoke of how I had taken care of her; that he had nobody else to depend upon to take care of him but me; that all the friends he had were not much good to him, and as to his relatives, all they wanted was to get what they could out of him. He had to depend upon me for the future as he had nobody else, and that he would pay me well for the good care I had given Mrs. Stanton, as he had nothing to answer for, as well as he would in the future for taking care of him."

The plaintiff's husband testified:

"In the early part of September, 1893, there was another conversation. He [Stanton] was about to go to Athol and from there intended to go to a hospital. He said, 'Look out for all that is in the house and take care of them, and there is nothing that you do but that I will pay you for, and Lizzie; I will pay you both for your past and future services for me and pay you well for it.'"

Another witness for the plaintiff testified:

"I have always heard him say that he expected to pay her well for it, for all her kindness, etc. He said he expected to pay Lizzie well for what she had done all along as well as for what she had done before."

The plaintiff requested nine rulings, of which the second,

sixth, and eighth were as follows, the other requests stating the same propositions in different forms or being immaterial.

" 2. If the defendant's intestate procured the services disclosed in the evidence by falsely representing to the plaintiff that he had adopted her, and the plaintiff rendered the services relying upon such false representations, she is entitled to recover the fair value of the services thus rendered."

" 6. If the services for which the plaintiff seeks to recover were rendered because of the false representations of, or the fraudulent concealment of, facts by the defendant's intestate as to the matter of adoption, the plaintiff is entitled to maintain an action within six years after she learns of such false representations or such false concealment."

" 8. If the defendant's intestate made an express contract with the plaintiff within six years of the date of her writ, whereby he promised, in consideration of future services to be rendered, to pay in lump for such services rendered in the past and to be rendered in future, and the plaintiff agreed thereto and rendered such services, she is entitled to recover for past and future services, notwithstanding the statute of limitations."

The judge declined to give the rulings requested, but ruled that the first four items in the account annexed to each count in the declaration were barred by the statute of limitations, and that this ruling applied to the claim for services mentioned in these four items in whatever form presented, whether in the first count or in the two subsequent counts.

The judge further ruled that there was no evidence relating to the matters contained in the plaintiff's requests sufficient to entitle the plaintiff to recover upon the first four items, and that the promise stated in the eighth request, and alleged in the second count of the declaration, would not entitle the plaintiff to recover for the services mentioned in the first four items, and submitted the case to the jury upon the last three items only, instructing them that if the services stated in these items were rendered under circumstances which called for payment, they should find for what they were reasonably worth, with interest from the date of the writ.

The jury found for the plaintiff for the amount of the last three items in the account annexed, with interest.

To the above directions and rulings the plaintiff alleged exceptions.

*J. W. Corcoran,* (*D. B. Ruggles* with him,) for the plaintiff.

*P. M. Keating,* (*T. J. Gargan* with him,) for the defendant.

HOLMES, C. J. This is an action to recover for services rendered by the plaintiff in the household of John Stanton, the defendant's intestate, from the time that she entered it, a little girl eight years old, in 1870, until 1884, and later between 1890 and 1893. Stanton took the plaintiff from an orphan's home and treated and spoke of her as his adopted daughter. She received her support and was sent to school, and did domestic work in return. At eighteen she married, but for three years she kept on without change. Then she moved into the next house, but performed services from time to time until Stanton died in 1892. There was a break, however, from 1884 to 1890. The case is here on exceptions, of which it is enough to mention one to a ruling that the items through 1884 were barred by the statute of limitations, others to refusals to rule that if the plaintiff rendered her services in the belief that she was Stanton's adopted daughter and that belief was due to false representations by Stanton, she could recover fair compensation, and one to a further ruling that a new promise of which we shall speak later, did not help the plaintiff as to the items barred.

It would be a strong thing to say that an actual contract to pay for services could be inferred from the conduct of one who takes a child into his household under the name of daughter. The fact of his calling her so implies that he is not purporting to enter into relations with her on a business footing. See *Mulhern* v. *McDavitt,* 16 Gray, 404; *Livingston* v. *Hammond,* 162 Mass. 375; *Kirchgassner* v. *Rodick,* 170 Mass. 543. But if the law were otherwise, the statute of limitations would be a bar to the items through 1884, and there was no fraudulent concealment of the cause of action. The only fraud suggested is that Stanton falsely represented that the plaintiff was his adopted daughter. This representation was not a concealment of the cause of action on a contract actually made, which of course, if made, the plaintiff must be taken to have known. There is no ground, either, for saying that the services before 1884 were items in a mutual account current.

The ground on which the plaintiff would have to rely is that there were fraudulent representations made by Stanton to the plaintiff concerning her status, which, if true, would exclude a contract, and which therefore did exclude an actual contract; that, as these representations were false, the law would imply a contract by fiction in aid of justice, and that the cause of action on this implied contract was fraudulently concealed by the combined effect of the original fraud and of the silence which followed it. *Manufacturers' National Bank* v. *Perry,* 144 Mass. 313. With regard to this contention it is enough to say that if there was any evidence of fraud in the statements made, a conclusion which could be reached only by the harshest interpretation of words which seem only to have expressed affectionate relations, it is settled by *Cooper* v. *Cooper,* 147 Mass. 370, that the remedy is an action of tort for the deceit and that a contract is not to be implied. See also *Ogden* v. *McHugh,* 167 Mass. 276. We remain satisfied with that decision. The case is unlike those where services are understood to be rendered for reward and the actual contract is made unavailable by the conduct of the defendant. There seems to be no sufficient reason for resorting to a fiction when the law gives a remedy on the actual facts. If on the footing of the supposed relation the plaintiff had transferred to Stanton money, or property which was converted by him into money, an action of contract might have been allowed upon the empirical considerations on which contract constantly is resorted to when unmarked money is wrongfully withheld. But there is no argument to be drawn from such a case to this. It is unnecessary to consider other objections which would have to be answered before the plaintiff could recover on this ground.

The strongest ground upon which the plaintiff's argument was put was that on various occasions, and especially when he was ill, Stanton made a new promise to the plaintiff, in consideration of her continuing to take care of him and of services to be rendered, that he would pay her for the past as well as for the present. There is no trouble, of course, about the sufficiency of such a consideration to support a promise to pay for past services as well as for future ones. *Vinal* v. *Richardson,* 13 Allen, 521, 526. If there had been a contract to pay for the past ser-

vices which was barred by the statute of limitations, the validity of the new contract would not be affected by Pub. Sts. c. 197, § 15, requiring a writing in order to take a case out of the statute by a mere acknowledgment or promise. *Devine* v. *Murphy,* 168 Mass. 249, 250. The only question on this part of the case is with regard to the meaning of the evidence. We shall not go over all the expressions testified to, but shall content ourselves with saying that no one of them seems to us fairly to bear the construction that it referred to the period when the plaintiff was living in Stanton's house as a girl or young married woman.

*Exceptions overruled.*