21414.   BULLOCH v. BULLOCH.

DECIDED FEBRUARY 20, 1932.

*J. R. Lunsford, Hooper & Hooper,* for plaintiff.

*W. W. Dykes,* for defendant.

BELL, J.   Ellise Bulloch, a minor, brought suit by another as next friend, against her father, N. E. Bulloch, to recover damages for pain and suffering resulting from a physical injury sustained by her by reason of the overturning of an automobile, which the defendant's wife, the mother of the child, was driving on request of the defendant, and in which the child was riding with its parents. The court sustained a general demurrer and dismissed the petition, and the plaintiff excepted.

The petition alleged that the defendant, with his wife and child, was traveling upon one of the public highways of this State, and that after he had driven the automobile for some time he became tired and requested his wife to drive awhile for him, and that in accordance with such request his wife assumed control of the vehicle and began to operate it at a speed of from 30 to 35 miles per hour;

that on arriving at a point upon the highway where as a result of recent rains there were several deep ruts which rendered the handling of the car more difficult and created a dangerous condition for a car traveling at such speed, "even with the best of handling," the defendant's wife, "in attempting to operate the car over and along said set of ruts, applied an unusual amount of gas to force the car into the desired direction, and, as she applied the gas by pressing her foot upon the gas control, she suddenly and without warning fainted and the car was thereupon entirely out of control," with the result that the automobile turned over twice, and the plaintiff, who was sitting at the time with the defendant on the back seat of the car, was injured; "that defendant is liable to [the plaintiff] for said injuries received at the hands of his agent who was operating said automobile for him and by his direction at the time and sustained by petitioner without any fault whatever upon [the plaintiff's] part;" that "the defendant was grossly negligent in turning over the operation of said car to his said wife and agent, for the reason that during her periods of menstruation defendant's wife was always in a nervous condition and subject to fainting spells, especially under the least excitement or strain coming upon her during said period; that the menstrual period of said wife and mother had come upon her the day before, and that she was then and there in the midst of said period and in an extremely nervous condition, and that these facts were well known to defendant at the time he turned over the control of the car to his said wife and caused her to operate it as his agent;" and "that on account of this cause, . . under the excitement and strain of the moment . . said operator fainted just as she applied increased pressure upon the gas control of said car, and that from this cause the wrecking of said car and injury to petitioner arose."

The petition alleged no other facts as to the negligence of the defendant or as to the cause of the overturning of the vehicle.

Assuming that the allegations were sufficient to show negligence on the part of the plaintiff's father, we are of the opinion that the petition failed to set forth a cause of action and was rightly dismissed on general demurrer. In the absence of allegations to the contrary, it is necessarily to be inferred that the child was unemancipated and was living with her father under the common relation of parent and child, and was thus subject to the father's control

as contemplated by law. In its last analysis, therefore, the case is one in which an unemancipated minor child seeks to recover damages for pain and suffering resulting from physical injuries sustained by reason of the father's negligence. Apparently the unbroken line of authorities is to the effect that the child can not maintain such an action.

Under the law of this State, the age of legal majority is twenty-one years. Until arrival at that age all persons are minors. Civil Code (1910), § 3019. Until majority it is the duty of the father to provide for the maintenance, protection, and education of his child. Civil Code (1910), § 3020. In the meantime the child remains under the control of the father, who is entitled to the child's services and the proceeds of its labor, provided that the parental power may be lost: by releasing the right to a third person; by consenting to the adoption of the child by another; by failure of the father to provide the necessaries for the child, or by abandonment of his family; by consenting for the child to receive the proceeds of its labor, which consent, however, shall be revocable at any time; by consenting to the child's marriage; and by cruel treatment. Civil Code (1910), § 3021.

So long as the right is not forfeited or released in some way (see also Civil Code of 1910, §§ .3023, 3024), the father is the natural guardian of his child's person, and is entitled also, as a matter of law, at least until the child is fourteen years of age, to act as the guardian of its property, upon filing a proper bond with the ordinary. Civil Code (1910), §§ 3031 to 3035; *Jordan* v. *Smith*, 5 *Ga. App.* 559 (63 S. E. 595); *Beard* v. *Dean*, 64 *Ga.* 259; *Watson* v. *Warnock*, 31 *Ga.* 716; *Kennedy* v. *Meara*, 127 *Ga.* 68 (5) (56 S. E. 243, 9 Ann. Cas. 396).

The plaintiff here was under the age of fourteen years, and the petition alleges no fact to show that the father had relinquished the usual power of control over her as his child, and it would seem that he would not forfeit such right merely by an isolated act of negligence.

Some of the decisions which deny the right of a child to maintain an action of this sort are expressly based upon the theory that the right did not exist at common law, while in other cases the courts have doubted the correctness of this theory and have placed their rulings upon other grounds. Whatever may have been the

rule at common law, we are satisfied that it would be against the public policy of this State to allow the maintenance of such an action, and by public policy we mean only the public policy as declared by the public laws.

Counsel for the plaintiff in error refer to the dissenting opinions in Small v. Morrison, 185 N. C. 577 (118 S. E. 12, 31 A. L. R. 1135), and Wick v. Wick, 192 Wis. 260 (212 N. W. 787, 52 A. L. R. 1113), and have contended that these dissents, rather than the majority opinions, should be accepted and followed by this court as expressive of the true law.

The case of Dunlap v. Dunlap, 84 N. H. 352 (150 Atl. 905, 71 A. L. R. 1055), is the nearest approach to authority for the plaintiff's contention that has been called to our attention, but in that case the father had employed his son, the minor, at a stipulated wage, and "it could be found that the father intended to take on a full master's responsibility and to release his parental control so far as necessary to attain that end." The father carried employer's liability insurance, computed in part upon the child's wages as included in the listed pay-rolls, the insurer's agent being aware of the relationship of parent and child. The case was finally put upon the change of the relation of parent and child to that of master and servant, and, being clearly distinguishable from the one at bar, any statements in the decision which may tend to question the soundness of the rule against liability as applicable to a case like the present were not necessary to the conclusion reached, and amounted to mere dicta. In fact, as we study the decision in the Dunlap case, we do not conclude that even the New Hampshire court would uphold an action like the one here under consideration. It is noticed that in that case one of the Justices dissented and another concurred only in the result.

In Fidelity & Casualty Co. v. Marchand, [1924] Can. S. C. R. 86, [1924] 4 D. L. R. 157, 13 B. R. C. 1135, it was held that a father was legally responsible for a negligent injury to his minor child, but the decision was placed upon a statute of the Province of Quebec, as to which one of the Justices said: "This rule is in as wide terms as possible and renders every person capable of distinguishing right from wrong responsible for damages caused by his fault to another. There is here no limitation, no exception of persons, and the class of those to whom compensation is due is as

wide as that of the persons on whom liability is imposed. It seems therefore sufficient to say *lex non distinguit,* however repugnant it may seem that a minor child should sue his own father, although it would probably be equally repugnant that a child injured by his father's negligent act, perhaps maimed for life, should have no redress for the damages he has suffered."

We can add but little of value to the many judicial utterances upon this question, since the most that we might be able to say has already been fully expressed in other decisions. Those who may be interested in the subject will find plenty of reading matter in the cases which we are citing in this opinion, and in the other decisions to which the cited cases refer.

In Small *v.* Morrison, 185 N. C. 577 (118 S. E. 12, 31 A. L. R. 1135), supra, the Supreme Court of North Carolina said: "From the very beginning, the family in its integrity has been the foundation of American institutions, and we are not now disposed to depart from this basic principle. Freedom in this country is the self-enforcement of self-enacted laws; and liberty with us is the right to go and do as you please under the law, or so long as you please to do right. Hence, in a democracy or a polity like ours, the government of a well-ordered home is one of the surest bulwarks against the forces that make for social disorder and civic decay. It is the very cradle of civilization, with the future welfare of the commonwealth dependent, in a large measure, upon the efficacy and success of its administration. Under these conditions the State will not and should not permit the management of the home to be destroyed by the individual members thereof, unless and until the interests of society itself are threatened. Whenever this occurs, adequate provision for the protection of the community, as well as the members of the family involved, has been supplied in the form of juvenile courts, welfare officers, etc. To say that a minor child, while living in the household of its parents, must be given the right to sue the latter for a tort committed, or else be declared an 'outlaw,' is simply begging the question and overlooking entirely the consequences that such a proceeding would have upon the household of which said child is an important member and component part. In this society of ours, complex as it is, all rights are relative; and the courts, as well as the legislature, must look to the larger good and not merely to the smaller hope."

In the case of Wick *v.* Wick, supra, the court, in holding that an infant can not recover damages from its parents for personal injuries sustained by reason of their negligence, went on to say: "The reasons in support of this doctrine may be summarized as follows: The family is a social unit. The members thereof are of the same blood. They are bound together by the strongest natural ties. Naturally, mutual love and affection obtain between the members thereof. There is mutual interest in one another's welfare. The family fireside is a place of repose and happiness. Society takes its caste from the character of its homes. It has a deep interest in maintaining in its integrity and stability the natural conception of the family unit. This imputes authority to the parent and requires obedience of the child. To question the authority of the parent or to encourage the disobedience of the child is to impair the peace and happiness of the family and undermine the wholesome influence of the home. To permit a child to maintain an action in tort against the parent is to introduce discord and contention where the laws of nature have established peace and obedience. Natural instinct condemns such proceedings as most unseemly, and the laws of society will not, to the detriment of society, defeat the benign influence of the laws of nature. That public policy which looks to the public welfare will not encourage discord and rebellion in the family unit, and thus destroy that wholesome influence of the home in moulding the character of our future citizens. Generally speaking, filial affection is ample protection to the child from excessive punishment at the hands of the parent, but where the authority of the parent is abused in the way of excessive or brutal punishment a child will be protected through the criminal laws of the State. True, this does not redress the child for permanent injuries which thus may be inflicted. But it is deemed better public policy that occasional injuries of this kind go unrequited rather than to encourage or tolerate proceedings so repugnant to natural sentiments concerning family relations. We find ourselves thoroughly in accord with courts holding that an action of this kind can not be maintained, and indorse the doctrine as one founded in a wholesome public policy."

The theory sought to be maintained in the present case would be equally applicable to any other state of facts whereby the child was injured as a result of the father's negligence, including even a negli-

gent condition of the domestic premises. Can a child sue its father because he failed to repair the back steps and thus caused the child to be injured? An infant tumbles from an unguarded porch which the parent knew or ought to have known was a place of danger. Is the father liable? In the yard is a board having a nail projecting from it, and the child's foot is injured. A next friend takes charge of the matter and enters suit in the name of the child to recover damages of the father. Would the court allow a recovery? Upon the clearest principles of law and justice, we answer, No! Any other doctrine would permit the parental control to be dethroned by any person who conceived the idea of protecting the child's interest, and would absolutely destroy the dominion of the father as the head of the family and the agent upon whom the State has placed the responsibility of properly rearing and controlling his offspring.

The supposed cases are not imaginary or fanciful, but any such case could be brought with full confidence of success if the right to sue in the present case should be sanctioned. The motives of the person here acting as next friend are not impugned, but the question is as to the proper rule to be applied in such cases, as deducible from the general laws of this State. If the present suit is maintainable, then any father may be haled into court and forced to trial upon the issue of negligence upon the slightest pretext, and could be harassed by any designing or officious person who might assume to bring a suit.

If a child shall be permitted to bring suit against its father for negligence, who is to determine whether there is probable cause and whether suit is to be instituted in a particular case? Shall this question be left to the community or neighborhood as a public affair, and if not, then to whom? Shall the matter be decided by just any person who chooses to constitute himself as the proper authority for its solution? It is our opinion that the law, so far from contemplating such a situation, has in principle provided the contrary, in placing the child within the control of the father, the purpose being not to protect the father but to maintain the family government for the larger welfare of the child.

Under the theory of liability as urged, the family dwelling house in which the child is sheltered with the other members of the family could be sold under a judgment against the father, and conceivably the entire estate of the father could thus be transferred to the owner-

ship of the child. The very fund from which the father supplied the necessaries of life could be seized by a garnishment, with the result that he would be stripped of the only means with which to perform the obligations placed upon him by law to support and maintain his child.

The reasoning which we have just expressed is not judicial legislation. While there is no statute in this State which expressly denies a right of recovery in such cases, we think the law as written could not be construed as permitting such actions, and our conclusions are based upon the positive and express rules of law as to the duties and responsibilities of the parent with respect to his child and the correlative authority vested in him as to governing and controlling such child.

It is said that a father may be sued by his child for a conversion of the child's property, and may be otherwise required to answer as to property rights between him and the child. To say that a father can not take the property or wealth of his child and use it for himself or for the purpose of discharging his parental obligations without being accountable in law, is no argument for allowing the child to use a claim for damages for personal injuries as a means of taking from the parental storehouse and setting up an estate of his own.

We do not hold that a father could not be held liable for a wilful or malicious wrong, or for some act of cruelty which operated at the same time to forfeit his parental authority.

In passing, we may advert to several cases of this general character, in which the decisions are not in accord. In Hewlett v. George, 68 Miss. 703 (9 So. 885, 13 L. R. A. 682), a daughter brought suit against her mother "for having wilfully, illegally and maliciously caused her to be imprisoned" in an asylum. The plaintiff was a minor, and, although she had been married, she was separated from her husband at the time of the alleged wrong. It was not clear from the evidence whether she had resumed her former place in her mother's home. The court held that if such were the case the action was not maintainable, stating broadly that a parent is not civilly liable to a child for personal injuries inflicted during minority and while the relation of parent and child, with its mutual obligations, exists.

In Roller v. Roller, 37 Wash. 242 (79 Pac. 788, 107 Am. St. R. 805, 3 Ann. Cas. 1, 68 L. R. A. 893), the Supreme Court of the

State of Washington went so far as to hold that a minor child could not maintain an action for damages against a parent for injuries inflicted during the existence of the family relation, and the fact that the wrong was the heinous offense of rape, for which the father was convicted and imprisoned, did not, in effect, emancipate the daughter or authorize the action.

A different view appears to have been taken in the case of Dix v. Martin, 171 Mo. App. 266 (157 S. W. 133), in which a girl about eight years of age sued to recover damages for an assault and battery. The defendant claimed immunity upon the ground that she occupied the relation of foster mother, as to the existence of which relation there was a conflict in the evidence. The Court of Appeals of Missouri affirmed a recovery, saying, "The assault was wicked and criminal, and, assuming that defendant stood in the relation of a parent to plaintiff, she should answer for the damages resulting from such excessive punishment.". Likewise, in Treschman v. Treschman, 28 Ind. App. 206 (61 N. E. 961), it was held that even though a stepmother stands in loco parentis to her stepchild she is not thereby relieved from liability for a malicious assault made by her upon the child. In Clasen v. Pruhs, 69 Neb. 278 (95 N. W. 640, 5 Ann. Cas. 112.), it was held that a parent or one standing in loco parentis is not liable either civilly or criminally for moderately and reasonably correcting a child, but is liable if the correction is immoderate and unreasonable; and that it is a question of fact to be determined by the jury whether or not the punishment inflicted was, under all the circumstances and surroundings, reasonable or excessive. In that case there is some discussion of the question as to whether a parent should be held liable for punishment imposed upon a child as a chastisement, which although excessive and unreasonable in fact was not of such a nature as seriously to injure the life, limbs or health of the child, and where the father did not act from bad faith or wicked impulses but committed a mere error of judgment as to what was reasonable and proper. It is pointed out that the authorities are not agreed as to whether such judgment or decision by the parent within the bounds referred to should be subject to review by the courts. Regardless of this question, it is apparent from a consideration of the opinions in the Treschman case that the court approved a recovery only upon the theory that the punishment amounted to an act of cruelty by the

parent. Our decision here is not in conflict with the rulings in any of these cases, and only by a dictum could we approve or disapprove the conclusions reached in any of them. We are dealing with a case of mere negligence, which does not involve a forfeiture of parental control, and can make no adjudication as to what should be the rule in other circumstances.

We have referred to section 3021 of the Civil Code, which states the conditions upon which the parental authority may be lost, and it may be that in this section is to be found a dividing line between liability and no liability in cases of this kind. In other words, if the father should so violate his obligations as to work a forfeiture of his right of control, as by cruelty or otherwise, and the child sustains injury thereby, may not the child maintain an action against the father for the legal wrong thus committed? It is abhorrent to think that he could not be sued for the "heinous offense of rape," and all other acts of cruelty, regardless of degree, would seem logically to stand upon the same footing as regards the question of liability.

The case now before us is distinguished from *Farrar* v. *Farrar,* 41 *Ga. App.* 120 (3) (152 S. E. 278). The plaintiff in that case merely continued to live in the home of her parents *after arriving at majority,* thus occupying the status of any other guest. The question presented in the instant case was expressly left open in that case.

Section 5506 of the Civil Code of 1910 provides that for every right there shall be a remedy, but since we must hold that the plaintiff has no enforceable right, there is no question as to remedy. Our conclusion in this case is not inconsistent with the constitutional provision that protection to person and property is the paramount duty of government, and shall be impartial and complete. Civil Code (1910), § 6358. It is only in cases where the laws are applied differently to different persons under the same or similar circumstances that the equal protection of the law is denied. *Baugh* v. *LaGrange,* 161 *Ga.* 80 (2) (130 S. E. 69).

Something has been said of liability insurance, but the petition shows nothing as to such insurance, and we can not presume its existence. Moreover, the fact that the defendant father may have carried liability insurance upon his automobile would be irrelevant, since liability must exist before such insurance would be applicable, and a policy of insurance could not establish that fact.

We conclude that the court properly sustained the general demurrer upon the ground that the unemancipated minor could not maintain the action to recover damages for personal injuries sustained by reason of the father's negligence.   See, in this connection, McKelvey v. McKelvey, 111 Tenn. 388 (77 S. W. 664, 102 Am. St. Rep. 787, 1 Ann. Cas. 130, 64 L. R. A. 991) ; Taubert v. Taubert, 103 Minn. 247 (114 N. W. 763) ; Smith v. Smith, 81 Ind. App. 566 (142 N. E. 128) ; Matarese v. Matarese, 47 R. I. 131 (131 Atl. 198, 42 A. L. R. 1360) ; Mannion v. Mannion, 3 N. J. 68 (129 Atl. 431) ; Mesite v. Kirchstein, 109 Conn. 77 (145 Atl. 753) ; Foley v. Foley, 61 Ill. App. 577; Elias v. Collins, 237 Mich. 175 (211 N. W. 88, 52 A. L. R. 1118) ; Miller v. Pelzer, 159 Minn. 375 (199 N. W. 97, 33 A. L. R. 678) ; Damiano v. Damiano, 6 N. J. 849 (143 Atl. 3) ; Sorrentino v. Sorrentino, 248 N. Y. 626 (162 N. E. 551) ; Ciani v. Ciani, 127 Misc. Rep. 304 (215 N. Y. Sup. 767) ; Schneider v. Schneider, 160 Md. 18 (152 Atl. 498, 72 A. L. R. 449).

Having dealt with the larger question, and having thus concluded that the petition does not set forth a cause of action even if it sufficiently shows negligence on the part of the defendant, we do not deem it necessary to examine the case further for the purpose of appraising the allegations with reference to negligence and proximate cause.

*Judgment affirmed.   Jenkins, P. J., concurs.   Stephens, J., dissents.*