## York Trust Company, Guardian, v. Blum, Administrator

*Luria & Still*, for plaintiff; *Harvey A. Gross*, for defendant.

SHERWOOD, J., December 6, 1934.—This matter is before the court on an affidavit of defense raising questions of law. Chauncey B. Eisenhart and Cordie Eisenhart were husband and wife and the parents of Carl Eisenhart and Mildred Eisenhart, the minor plaintiffs having for their guardian York Trust Company. Cordie Eisenhart was the owner of an automobile. At her invitation and request, on January 21, 1933, Chauncey B. Eisenhart was riding as a passenger in said automobile, owned by and then and there operated by Cordie Eisenhart within the limits of the County of York. A collision occurred at Spring Grove Road and Lincoln Highway, in West Manchester Township. Both Cordie Eisenhart and her husband were killed in this collision. Robert W. Blum, Jr., is administrator of the Cordie Eisenhart estate and is the defendant in this suit, brought by the minor children, through their guardian, to recover damages against their mother's estate based upon her negligence in causing the death of the children's father.

Defendant in his affidavit of defense raising questions of law asserts: (1) That plaintiff's statement of claim does not disclose any legal cause of action on behalf of the plaintiffs against the defendant; (2) that there is no legal right of action existing in the minor children to bring this action; and (3) that it is contrary to the policy of the law to permit minor children to prosecute actions against parents' estates.

The recent American cases without exception adhere to the common-law rule that an unemancipated minor child cannot sue his natural parent for a personal tort: Hewlett v. George, Exec., 68 Miss. 703, 9 So. 885; Elias v. Collins, 237 Mich. 175, 211 N. W. 88; Wick v. Wick, 192 Wis. 260, 212 N. W. 787; Small et al. v. Morrison et al., 185 N. C. 577, 118 S. E. 12; Matarese v. Matarese, 47 R. I. 131; Ciani, etc., v. Ciani, 127 Misc. Rep. 304, 215 N. Y. Supp. 767; Taubert v. Taubert, 103 Minn. 247, 114 N. W. 763; McKelvey v. McKelvey et ux., 111 Tenn. 388, 77 S. W. 664; Smith v. Smith, 81 Ind. App. 566, 142 N. E. 128; Roller, etc., v. Roller, 37 Wash. 242, 79 Pac. 788; Kelly v. Kelly, 158 S. C. 517, 155 S. E. 888; Securo, etc., v. Securo, 110 W. Va. 1, 156 S. E. 750; Lusk v. Lusk, 113 W. Va. 17, 166 S. E. 538; Bulloch v. Bulloch, 45 Ga. App. 1, 163 S. E. 708; Lund v. Olson et al., 183 Minn. 515, 237 N. W. 188; Belleson v. Skilbeck et al., 185 Minn. 537, 242 N. W. 1; Canen v. Kraft et al., 41 Ohio App. 120, 180 N. E. 277; Trudell v. Leatherby et al., 212 Cal. 678, 300 Pac. 7; Mannion, etc., v. Mannion, 3 N. J. Misc. 68, 129 Atl. 431; Dunlap v. Dunlap, 84 N. H. 352, 150 Atl. 905; 20 R. C. L. 631; 46 C. J. 1324; annotations, 31 A. L. R. 1157, 52 A. L. R. 1123, and 71 A. L. R. 1071.

The basis of the above rule, as appears from the cases and texts, lies in the very vital interest which society has in preserving harmony in domestic relations and in not permitting families to be torn asunder by suits for damages by children against their parents for real or fancied grievances It is deemed better that an occasional wrong should go unrequited than that the family life should be subjected to the disrupting effects of such suits.

The only Pennsylvania case is that of Briggs et al. v. City of Philadelphia et al., 112 Pa. Superior Ct. 50, where our own Superior Court says: "There never has been a common law rule that a child could not sue its parent. But, there is substantial decisional authority that it is not permitted on the theory that it is disruptive of the family peace, destructive of the enforcement of discipline, and, therefore, against public policy. We recognize the wisdom of these rulings as the state and society are vitally interested in the integrity of, and harmony in, the family."

Plaintiffs insist, however, as was said in the case of Dunlap v. Dunlap, supra, that the law does not make fetishes of ideas and that we must not exalt this rule above ordinary common sense. Plaintiffs insist that with the death of both parents the reason for the rule ceased; that one of the maxims of the common law is that when the reason for a rule ceases the rule itself ceases: cessante ratione legis cessat ipsa lex. Assuming this to be true, the answer to plaintiffs' contention is a statutory limitation on the right to institute an action against the decedent's fiduciary, under section 35 (b) of the Fiduciaries Act of June 7, 1917, P. L. 447, 504, as amended. This section, so far as pertinent to this decision, provides: "Executors or administrators shall have power . . . to commence . . . all personal actions which the decedent whom they represent might have commenced and prosecuted, except actions for slander and for libels; and they shall be liable to be sued . . . in any such action, except as aforesaid, which might have been maintained against such decedent if he had lived."

The latter language, "which might have been maintained against such decedent if he had lived", creates a condition precedent to the institution of any action against an executor or administrator of a decedent. Under the above decisions, the child could not have instituted an action against its parents for a personal tort if the parent were living. It follows, under the language of the act, that, the child having no such right against the living parent, it can have none against the parent's fiduciary after the parent's death. It follows that the

affidavit of defense raising questions of law must be sustained. This decision, in our opinion, disposes of the whole of the plaintiff's claim, and the court should therefore enter judgment for the defendant.

And now, to wit, December 6, 1934, the questions of law raised by defendant's affidavit of defense in this case are sustained, and judgment on said questions of law is entered in favor of the defendant and against the plaintiff.