**UNION BANK AND TRUST COMPANY OF MT. HOLLEY, NEW JERSEY, as Guardian for John Steven Couch, Appellant,**

v.

**The FIRST NATIONAL BANK AND TRUST COMPANY OF WAYNES-BORO, PENNSYLVANIA, as Administrator of the Estate of Ellen Jordon Couch, Appellee.**

**MUSKEGON BANK AND TRUST COMPANY, MUSKEGON, MICHIGAN, as Guardian for Robert James Couch, Appellant,**

v.

**The FIRST NATIONAL BANK AND TRUST COMPANY OF WAYNES-BORO, PENNSYLVANIA, as Administrator of the Estate of Ellen Jordon Couch, Appellee.**

Nos. 22742, 22743.

United States Court of Appeals
Fifth Circuit.

June 13, 1966.

Rehearing Denied July 14, 1966.

**312**

Marcus B. Calhoun, Forester & Calhoun, Thomasville, Ga., for appellants.

Roy M. Lilly, T. Heyward Vann, Alexander, Vann & Lilly, Thomasville, Ga., for appellee.

Before TUTTLE, Chief Judge, BELL, Circuit Judge, and KILKENNY,* District Judge.

TUTTLE, Chief Judge.

This is an appeal by the original plaintiffs, guardians for the minor children of Mrs. Ellen Jordon Couch, deceased, whose estate is represented by the First National Bank and Trust Company of Waynesboro, Pennsylvania. The two suits consolidated for appeal, originated as tort actions filed on behalf of the two unemancipated children of the defendant's decedent. Mrs. Couch was the driver of the automobile in which her children were riding, when the accident occurred that caused her death and that of her husband, and injured the children. The accident occurred in the state of Georgia.

The complaints were identical. They contain three counts. Count One undertook to assert the charge of wilful and wanton negligence against Mrs. Couch as a basis for the sons' recovery against her. Such a claim would be necessary under the Georgia law which prohibits a recovery by an unemancipated child against its parents for a tort caused by ordinary negligence. This count charged the deceased mother with wilful and wanton negligence, alleging that with a conscious indifference to consequences and with a wilful disregard of the safety

* Of the District of Oregon, sitting by designation.

of the plaintiffs, she wilfully and wantonly drove and operated her vehicle to the left side of the highway at a high and dangerous rate of speed in excess of 60 miles per hour, attempting to pass another vehicle while meeting a vehicle traveling in the opposite direction, and that she collided with the oncoming vehicle on the wrong side of the road, inflicting the injuries complained of.

Count Two alleged ordinary negligence in the operation of the motor vehicle, but then alleged that the deceased mother was covered by a policy of liability insurance which would protect her and her estate in any action for damages resulting from the negligent operation of the motor vehicle. It was claimed that by reason of the existence of this policy of liability insurance, the mother would not be immune to suit by her minor children.

Count Three of the petition charged that the deceased mother was guilty of negligence proximately causing the injuries and that inasmuch as the mother was deceased at the time the suits were brought, her estate should not be immune to suit because of the injuries received by the plaintiffs.

Upon affidavits filed by the sole eyewitness to the accident, and upon testimony by deposition of a state highway patrolman, the case was submitted to the trial court on a motion for summary judgment filed by the defendants. The trial court entered an order dismissing the complaints without assigning reasons therefor. It is apparent, however, that the trial court must have concluded that on the evidence before him there was not an issue to be presented to the jury as to the existence of wilful and wanton misconduct, which would have to be proved under the theory contained in the first count of the complaint, and also because the trial court concluded that the facts alleged in counts two and three would not justify fixing liability in favor of the children against their mother under the applicable Georgia law.

While it appears to be somewhat strange that this cause of action between members of a family residing in Pennsyl-vania at the time of the accident and re-siding now in New Jersey and Michigan should be tried in the District Court of the Middle District of Georgia, neither party has raised the question of forum non conveniens, and both parties concede that the law of the place of the accident, which coincides with the law of the forum, the law of the state of Georgia, is to control with respect to the questions touching on the liability of the parties as well as on all procedural matters. While this is a case which might well appeal to a state appellate court as a proper one in which to apply the law of the foreign state which is primarily concerned with the family relationships, we do not find any Georgia decision that would warrant our construing the Georgia Supreme Court opinions in such manner as to justify our looking to the law of any other state than Georgia.

■ As to count one of the complaint, we concur in the judgment of the trial court to the effect that there was no evidence submitted on the motion for summary judgment that could properly permit an inference by a jury that Mrs. Couch was guilty of wilful or wanton conduct of the kind that must be established under the Georgia rule which denies the right of an unemancipated child to sue its parent for wrongs committed by the latter unless the parent's conduct be such as would amount to a surrender of his right to retain his parental relationship. In the case of Wright v. Wright, 85 Ga. App. 721, 70 S.E.2d 152, 156, the court said:

"[I]f the conduct of the parent here should be found to be mere negligence, as opposed to an act of cruelty sufficient to sever the parental relationship and evidenced by wanton and malicious misconduct on the part of such parent, then the action is one for negligence only and the action would necessarily fail."

The first Georgia case to announce the principle of non-liability of a parent for his negligent tort causing injury to his child is Bulloch v. Bulloch, 45 Ga.App. 1, 163 S.E. 708. In that case the Georgia

Court of Appeals held that no recovery could be had where acts of ordinary negligence were charged to the parent. The court said:

"Some of the decisions which deny the right of a child to maintain an action of this sort are expressly based upon the theory that the right did not exist at common law, while in other cases the courts have doubted the correctness of this theory and have placed their rulings upon other grounds. Whatever may have been the rule at common law, we are satisfied that it would be against the public policy of this state to allow the maintenance of such an action, and by public policy we mean only the public policy as declared by the public laws."

In the *Bulloch* case the court dealt with the matter as if it were question of an enforceable right rather than one of denying a remedy. On page 11 of the opinion, 163 S.E. on page 713, the court said:

"Having dealt with the larger question, and having thus concluded that the petition does not set forth a cause of action, even if it sufficiently shows negligence on the part of the defendant, we do not deem it necessary to examine the case further for the purpose of appraising the allegations with reference to negligence and proximate cause."

Appellants here concede that in the absence of a case establishing wilful or wanton misconduct, they would be barred by the *Bulloch* case but for the allegations contained in counts two and three.

Appellants, by pleading the facts contained in counts two and three, undertake to demonstrate that the case for a right of recovery here is different from that before the Court of Appeals of Georgia in *Bulloch*. The circumstances that bring about this difference are of two kinds. They contend, first, that the Georgia court placed its decision to deny recovery in the *Bulloch* case on the tendency to disrupt the family unity if a child were permitted to sue its parents, no matter how clear the negligence of the parent

producing injury to the child, the exception being only in such cases as the conduct of the parent was such as to warrant his being deprived of further custody and care of his offspring. The second, and subsidiary basis, appellant says, for the decision in *Bulloch*, was the reluctance of the court to permit one child to subject his father's assets to his claims and thus deprive the father of the very means by which all of the children were to be supported during minority. Here, in Count two, appellants show that the existence of public liability insurance to cover the loss resulting from a judgment against the parent's estate, would eliminate the second basis of the Georgia court's decision, whereas the fact, alleged in count three, that the mother is now deceased would make unnecessary the application of an immunity doctrine on the ground of disruption of the family unity which would exist if the sued parent were still alive.

Appellants recognize that our duty as a federal court applying state law under Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is to ascertain what the state law is in a particular situation, and if there is no state appellate court decision on the precise point, we are to do the best we can to determine what the decision of the Georgia court would be dealing with the case before us.

In brief, the appellants argue that to the extent that the Georgia rule was established because of a reluctance of the Georgia courts to permit interfamily suits because of the disruptive effect between parent and child, this situation does not exist where the parent who is proceeded against is deceased, as, in fact, also, is the other parent, both of them having been killed in the same accident. Then, to the extent that the Georgia rule may be said to depend upon the reluctance of the Georgia court to permit a recovery in favor of one child that will deplete the family resources for the protection of the entire family, this problem too is non-existent where the deceased parent was protected by liability insur-

ance, out of which a judgment can be paid up to the limits of the policy.

Appellee has two primary arguments against these suggestions by appellants. The first is that the Court of Appeals decision in this area of the law is binding, and it not having been criticized or changed within the last 35 years, this court must adopt it as the law of the state of Georgia. The second is that the existence or non-existence of a liability insurance policy cannot amount to the creation of a right of recovery if none exists in the absence of such policy.

So far as relates to the first response by appellee, we do point out that the facts in this case are not the same as in *Bulloch*. In that case the child actually sued his father, who was then in life, and thus the apprehension of the court was fully justified that to permit such a cause of action would tend to disrupt the family unity. The Georgia Court of Appeals laid great stress on this. It cited a number of cases from other jurisdictions, including Wick v. Wick, 192 Wis. 260, 212 N.W. 787, 52 A.L.R. 1113, in which the court said:

"The reasons in support of this doctrine may be summarized as follows: The family is a social unit. The members thereof are of the same blood. They are bound together by the strongest natural ties. Naturally, mutual love and affection obtain between the members thereof. There is mutual interest in one another's welfare. The family fireside is a place of repose and happiness. Society takes its caste from from the character of its home. It has a deep interest in maintaining in its integrity and stability the natural conception of the family unit. This imputes authority to the parent and requires obedience of the child. To question the authority to the parent or to encourage the disobedience of the child is to impair the peace and happiness of the family and undermine the wholesome influence of the home. To permit a child to maintain an action in tort against the parent is to introduce discord and contention where the laws

of nature have established peace and obedience. Natural instinct condemns such proceedings as most unseemly, and the laws of society will not to the detriment of society, defeat the benign influence of the laws of nature." Bulloch v. Bulloch, 45 Ga.App. 1, 6, 163 S.E. 708.

The court also took pains to distinguish other cases from foreign states holding differently. We think it quite clear that the court's reluctance to permit the disturbance of the family unity by such a lawsuit was the primary basis for its decision in the *Bulloch* case.

So far, however, as relates to the effect on the family assets, the *Bulloch* case also said:

"Under the theory of liability as urged, the family dwelling house in which the child is sheltered with the other members of the family could be sold under a judgment against the father, and conceivably the entire estate of the father could thus be transferred to the ownership of the child. The very fund from which the father supplied the necessaries of life could be seized by a garnishment, with the result that he would be stripped of the only means with which to perform the obligations placed upon him by law to support and maintain his child."

Thus, it is plain that the court was also impressed with the need for maintaining the financial integrity of the family, and concluded that the child injured by the parent's negligence must suffer his damage in silence for the benefit of the others.

The question then comes whether these record differences in the facts would justify a conclusion that the Court of Appeals or the Supreme Court of Georgia would take a different view of the question were the case presented to it in which the parents were both deceased and they were protected by public liability policies for the protection of the family's assets.

We have guidance in this regard by the Georgia court's development of the law in relation to permitting suits for negli-

gence to be maintained against eleemosynary institutions in the state of Georgia. The law had long been in Georgia that a person injured by an employee of a hospital or school or church maintained as a public trust could not recover against such an institution because this would constitute a depletion of the trust assets which were to be protected for the benefit of the beneficiaries of the trust. As the Court of Appeals of Georgia, in Cox v. DeJarnette, 104 Ga.App. 664, 123 S.E.2d 16 said:

> "We must agree with the defendant that the doctrine of charitable immunity from tort liability is established in our law. The underlying reason for this policy seems to be the advisability of preserving the eleemosynary funds so as to enable the charity to carry out its beneficent purposes." 104 Ga.App. 664, 671, 123 S.E.2d 16, 22.

In the *Cox* case, however, the Court of Appeals, while recognizing that it was bound by the Georgia cases establishing the charitable immunity from tort liability, undertook to analyze the reason for the rule, and determined that since the reason was no longer applicable because of the existence of a public liability insurance policy, the legal principle, theretofore stated in broad terms, should be modified accordingly. Thus, in that case, it announced the further policy that "[i]t is apparent that to the extent of the coverage afforded by this policy, the charitable assets of the church held by the defendant will not be depleted by the rendition of a judgment against the trust in favor of the plaintiff for the damages sustained. Up to the amount of insurance thus afforded, there appears to be no sound reason or public policy for conferring immunity from tort liability upon the trust, though it be a charity." 104 Ga.App. 664, 673, 123 S.E.2d 16, 22.

We note that the appellee contends that Georgia courts, in obiter dictum in the *Bulloch* case, commented to the effect that if liability insurance existed, this would not create liability if none existed in the absence of such a policy. Appellee contends from this that the existence of a liability policy here cannot be the basis of giving rise to a cause of action which otherwise would not exist. It is to be noted, however, that the Georgia Supreme Court has discussed the general charitable immunity in terms of "liability" and "cause of action." See Plant System v. Dickerson, 118 Ga. 647, 45 S.E. 483, and see the Georgia Court of Appeals decision of Butler v. Berry School, 27 Ga.App. 560, 100 S.E. 544. Also, it is to be noted that the Georgia Supreme Court, in Morehouse College v. Russell, 219 Ga. 717, 135 S.E.2d 432, expressly approved the language from Cox v. DeJarnette, supra, in commenting upon the right of the plaintiff in such a case to plead the existence of a liability policy. The language there quoted is, "But where, as here, *the existence of the cause of action is based upon, indeed is dependent upon,* the liability policy as a non-charitable asset, it is essential that it be set forth in the petition." Then, in the *Morehouse College* case itself, the Georgia Supreme Court reaffirmed the decision of the Court of Appeals by holding that the existence of a public liability policy modified the general rule of no liability in a suit for damages against an eleemosynary institution.

We are impelled to conclude that the erosion by the Georgia courts of the charitable exemption doctrine long made applicable to charitable institutions, forecasts similar action by the State court with respect to the right of a child to sue the estate of its deceased parents where a public liability policy is extant, notwithstanding the continued validity of the nonsuability principle when the facts remain as they were in the *Bulloch* case.

Where, in addition to the existence of a public liability policy, there can be no interference with the family tranquility or unity by reason of a suit against *deceased* parents, we think the Georgia courts would apply the same modifying influence to the no-liability principle in actions of this kind that it has applied in relation to suits against charitable trusts.

It is plain from the *Cox* case that in such a situation, if the parents were still living, recovery would be lim-

ited to the amount of the liability policy. While it may be that the fact of death of the parents might cause a complete relaxation of the rule, we do not feel it appropriate to go beyond the clear indication given us by the Georgia courts that an action by a child against his parent or deceased parent must be limited to the coverage afforded by the policy.

It appearing that the trial court entered its order of summary judgment on an erroneous principle of law, the cases must be remanded for further consideration by that court. The question whether the proof submitted to the trial court was sufficient to warrant submission to a jury of the issue of gross negligence and the legal question whether in a suit of this character proof of gross negligence is required on the theory of the child's being limited to recovery as if he were a guest are matters that have not been considered by the trial court.[1] We therefore, do not attempt to solve these issues.

The judgment appealed from is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

---

1. See in this connection Wood v. Morris, by Next Friend, 109 Ga.App. 148, 135 S.E.2d 484; Chancey v. Cobb, 102 Ga. App. 636, 117 S.E.2d 189; Morris v. Cochran, et al., 98 Ga.App. 786, 106 S.E. 2d 836. See also the discussion in Kudrna v. Adamski, 188 Or. 396, 216 P.2d 262, 16 A.L.R.2d 1297.