[No. 5086. Decided February 27, 1905.]

LULU ROLLER, *by E. C. Million, her Guardian ad Litem, Respondent,* v. E. W. ROLLER, *Appellant.*[1]

PARENT AND CHILD—WRONGS OF PARENT—DAMAGES—ACTION BY CHILD AGAINST PARENT—RAPE. A minor child cannot maintain an action for damages against a parent for injuries inflicted while the family relation exists, and the fact that the wrong was the heinous offense of rape, for which the father was convicted and imprisoned, does not, in effect, emancipate the daughter or authorize the action.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered January 14, 1904, upon findings in favor of the plaintiff, after a trial before the court without a jury, in an action for damages for the commission of rape. Reversed.

*Henry McLean,* for appellant.

*Gable & Seabury* and *Million & Houser,* for respondent. The plaintiff was emancipated by the act of the defendant. Rodgers, Domestic Relations, § 467; *Wilson v. McMillan,* 62 Ga. 16, 35 Am. Rep. 115; *Watson v. Watson,* 53 Mich. 168, 18 N. W. 605, 51 Am. Rep. 111.

[1]Reported in 79 Pac. 788.

DUNBAR, J.—The defendant was convicted of the crime of rape, committed upon his minor daughter, Lulu Roller, and was sentenced to a term in the penitentiary at Walla Walla. This action was commenced by the said Lulu Roller for the purpose of recovering from said defendant damages for said rape, in the sum of $2,000, and the homestead of the defendant, upon which the minor children of the defendant were residing, was attached. The said Lulu Roller, at the time of the commencement of this action, was fifteen years old. The homestead in dispute was the community property of Roller and his deceased wife, Emma Roller. The defendant interposed a demurrer to the complaint of the plaintiff, on the ground that it did not state facts sufficient to constitute a cause of action, in that the plaintiff, being the minor child of defendant, living with him and unemancipated, had no right to sue for a tort committed by the parent upon the child. Motion was made to discharge the attachment, (1) because the land was the homestead exempt under the state law, and (2) because the land was exempt under the federal statute, which exempts such property from debts contracted before the issuance of the patent. The motion to discharge the attachment was overruled. Upon the trial of the cause, judgment was entered in favor of the plaintiff for the sum of $2,000.

It is assigned that the court erred in overruling the demurrer of the appellant to the amended complaint of the respondent, and in overruling the motion to dissolve the attachment. It is the contention of the appellant that a minor child cannot sue a parent for damages arising upon tort, that such actions are against public policy, and not permitted by the law. The rule of law prohibiting suits between parent and child is based upon the interest that society has in preserving harmony in the domestic relations, an interest which has been manifested since the earliest or-

ganization of civilized government, an interest inspired by the universally recognized fact that the maintenance of harmonious and proper family relations is conducive to good citizenship, and therefore works to the welfare of the state.

This view, in effect, is not disputed by the respondent, who admits the general proposition that the domestic relations of the home and family fireside cannot be disturbed by the members thereof, by litigation prosecuted against each other for injuries, real or imaginary, arising out of these relations; but he asserts that the law has well defined limitations, and that every rule of law is founded upon some good reason, and the object and purpose intended to be attained must be looked to, as a fair test of its scope and limitations; that, in the case at bar, the family relations have already been disturbed, and that, by action of the father, the minor child has, in reality, been emancipated; that the harmonious relations existing have been disturbed in so rude a manner that they never can be again adjusted; and that, therefore, the reason for the rule does not apply.

There seems to be some reason in this argument, but it overlooks the fact that courts, in determining their jurisdiction or want of jurisdiction, rely upon certain uniform principles of law, and, if it be once established that a child has a right to sue a parent for a tort, there is no practical line of demarkation which can be drawn; for the same principle which would allow the action in the case of a heinous crime, like the one involved in this case, would allow an action to be brought for any other tort. The principle permitting the action would be the same. The torts would be different only in degree. Hence, all the disturbing confusion would be introduced which can be imagined under a system which would allow parents and children to be involved in litigation of this kind.

Outside of these reasons which affect public policy, an-

other reason, which seems almost to be *reductio ad absur-dum,* is that, if a child should recover a judgment from a parent, in the event of its death the parent would become heir to the very property which had been wrested by the law from him.   In addition to this, the public has an interest in the financial welfare of other minor members of the family, and it would not be the policy of the law to allow the estate, which is to be looked to for the support of all the minor children, to be appropriated by any particular one.

At common law it is well established that a minor child cannot sue a parent for a tort.   It is said by Cooley on Torts, p. 276, under the title of "Wrongs to a Child:" "For an injury suffered by the child in that relation no action will lie at the common law."   And this has been held to be analogous to coverture, where a husband or wife is forbidden to sue the other spouse for torts or wrongs committed upon them to their damage during coverture, even refusing the action after the relation, by a divorce, has ceased to exist.   See *Abbott v. Abbott,* 67 Me. 304, 24 Am. Rep. 27, which is simply an expression of the universal law on that subject.   See, also, *Bandfield v. Bandfield,* 117 Mich. 80, 75 N. W. 287, 72 Am. St. 550, 40 L. R. A. 757

Mr. Schouler, in his work on Domestic Relations, § 275, after discussing the proposition of filial relations, says:

"With reference to a blood parent, however, all such litigation seems abhorrent to the idea of family discipline which all nations, rude or civilized, have so steadily inculcated, and the privacy and mutual confidence which should obtain in the household.   An unkind and cruel parent may and should be punished at the time of the offence, if an offender at all, by forfeiting custody and suffering criminal penalties, if need be; but for the minor child who continues, it may be for long years, at home and unemancipated, to bring a suit, when arrived at majority, free from

parental control and under counter-influences, against his own parent, either for services accruing during infancy or to recover damages, for some stale injury, real or imagined, referable to that period, appears quite contrary to good policy. The courts should discourage such litigation; . . ."

This text goes beyond the circumstances of the case at bar, where the action was brought during the minority of the plaintiff. As will be seen by the extract above quoted, it is even forbidden after the child becomes of age, if the injury sued upon is referable to the period of minority. So well is this principle of the law understood that there have been very few attempts to inaugurate actions of this kind.· The only one to which we are referred by brief of counsel, or which we have been able by independent investigation to discover, which seems to be in point, is *Hewlett v. George,* 68 Miss. 703, 9 South. 885, 13 L. R. A. 682, where it was held that a parent is not civilly liable to a child for personal injuries, inflicted during minority, and where the relation of parent and child with its mutual obligations exist. This was an action by the daughter against the mother for wrongful incarceration in an insane asylum, and was brought after the marriage of the daughter who, at the time of the alleged injuries, was separated and living away from her husband—a much stronger case, it will be seen, in favor of entertaining an action, than the one at bar, so far as the relations of the parties were concerned. The court, in refusing the remedy, said:

"The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrongdoing, and this is all the child can be heard to demand."

There being no authority at common law for such an action, and it not being claimed that there is any statutory provision for an action of this kind, we are of the opinion that the action should not have been entertained, and that the demurrer to the complaint should have been sustained. This conclusion renders unnecessary a discussion of the other questions involved.

The judgment is therefore reversed, with instructions to the lower court to sustain the demurrer to the complaint.

MOUNT, C. J., HADLEY, and FULLERTON, JJ., concur.

RUDKIN, ROOT and CROW, JJ., took no part.