Hillsborough,
No. 5279.

JULIETTE SMALL DEAN

*v.*

HARRISON E. SMITH, *Adm'r & a.*

Argued February 2, 1965.
Decided June 30, 1965.

*Hamblett, Kerrigan & Hamblett* (*Mr. Joseph M. Kerrigan* orally), for the plaintiff.

*Devine, Millimet, McDonough, Stahl & Branch* and *David A. Brock* (*Mr. Brock* orally), for the defendant Harrison E. Smith as administrator and for the intervenor Aetna Insurance Company.

LAMPRON, J. The agreed statement of facts of the parties is as follows: "Harrison E. Smith is administrator of the estate of Eugene E. Small, late of Nashua, who died intestate at Nashua on April 14, 1962, his death having been caused instantaneously by a collision on that date between a motor vehicle operated by the said Eugene E. Small and another vehicle operated by Emanuel H. Gutman of said Nashua. Brian Small, Barry Small and Brent Small were at the time of the accident unemancipated minor children of Eugene E. Small, riding as passengers in the Small vehicle, which was insured under an effective policy of motor vehicle liability insurance. The petitioner, Juliette Small Dean, is the widow of Eugene E. Small, and the mother of the minors . . . each of whom suffered personal injuries in the said accident. Litigation has been commenced by Juliette Small Dean against Harrison E. Smith, administrator, to enforce her own claim for expenses for medical, hospital and nursing care for each such minor child, and to enforce the personal injury claims of each such minor child."

The defendants rely on the case of *Worrall* v. *Moran*, 101 N. H. 13, decided by this court in 1957. It held that tort actions against the administrator of their father's estate could not be maintained on behalf of two unemancipated minor children where one had died and the other was injured while passengers in an automobile driven by their late father. The plaintiff asks this court to reconsider that decision and urges us "to review the steady growth of the law limiting parental immunity since 1957, with particular emphasis on ending the immunity where the responsible parent is dead." The defendants deny that there has been any substantial departure from "the firmly established parental immunity rule."

As was pointed out in *Dunlap* v. *Dunlap*, 84 N. H. 352, 354, "there never has been a common-law rule that a child could not sue its parent . . . . The minor has the same right to redress for wrongs as any other individuals . . . . The limitations which have been put upon that right have been deduced from prevalent ideas touching family life, and especially parental rights and duties." This disability to sue or immunity from suit was created by the courts and became the basis for the rule that such an action is contrary to public policy. *Overlock* v. *Ruedemann*, 147 Conn. 649.

"The origin of this doctrine is ascribed to the case of *Hewlett* v. *Ragsdale* [or George], 68 Miss. 703 [1891], which gives as its basis (*p.* 711) the following: 'So long as the parent is under obligation to care for, guide and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society . . . and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent.' " *Levesque* v. *Levesque*, 99 N. H. 147, 148.

In the above case, decided in 1954, a divided court denied to an unemancipated child the right to sue his living parent for bodily injury caused by the negligent operation of a motor vehicle. This disability of an unemancipated child to sue a parent was extended, again by a divided court, to a suit against the estate of a dead parent. *Worrall* v. *Moran*, 101 N. H. 13, decided in 1957.

The *Levesque* decision recognized "that there have been some departures under certain circumstances from the broad doctrine that an unemancipated minor cannot maintain a tort action against his parent," and "especially if there is insurance against the specific risk." *P.* 148. However it was then the opinion of this court that if "the almost general existence of liability insurance has so materially changed the circumstances which militated against such suits that a change in the public policy now prevailing in this state should be made . . . that is a matter for the Legislature to determine rather than being within the province of this court." *Ib.*, 149. It was pointed out in the *Worrall* case that bills introduced at the next session of the Legislature, in 1955, to permit an unemancipated minor to maintain a suit against a parent for negligence failed to be enacted. This result

was interpreted as indicating a legislative intent against permitting suits by a child against a living parent or his representative, when deceased. *Worrall* v. *Moran*, 101 N. H. 13-15.

However, the immunity of parents from suit by their unemancipated children was not created by the Legislature. On the contrary the courts imposed on such a child this disability to enforce "the same right to redress for wrongs as any other individuals." *Dunlap* v. *Dunlap*, 84 N. H. 352, 354. Consequently it is the responsibility of the judiciary to examine this court-made rule and to make such alterations as the interests of justice may require even though the Legislature has chosen not to change it, as was their privilege. *Goller* v. *White*, 20 Wis. 2d 402, 412. We feel that this is an opportune time to re-evaluate and re-examine the considerations which motivated the creation and continuation of this doctrine to ascertain if justification still exists for its continuation, at least in suits against a parent who is deceased.

The basic reasons advanced in support of the rule preventing an unemancipated child from suing his parents are that domestic tranquillity and parental discipline and control would be disturbed by the action. Prosser, Law of Torts (3d *ed.*) *p.* 887. It would serve no useful purpose to recite and review all the variations of and additions to the above reasons advanced by various courts in support of this doctrine. See *Trevarton* v. *Trevarton*, 151 Colo. 418, 421.

It is self-evident that the disruption of family relations and the weakening of parental rights and duties are much less likely to occur, if at all, when the child's suit is against the estate of a deceased parent. *Harlan National Bank* v. *Gross*, 346 S. W. 2d 482, 483 (Ky. 1961); *Logan* v. *Reeves*, 209 Tenn. 631, 636. In such a case the responsible parent is gone and the surviving parent is usually the person suing for the injured or deceased unemancipated children. Family discord is much less likely to result from such an action than from a tort action by a living spouse against the other or one by an unemancipated minor for damage to his property both of which are permitted. Prosser, Law of Torts, *supra*.

Furthermore we cannot ignore the well known fact that most drivers today are covered by liability insurance. We still believe that the fact that a particular motorist is insured should not impose on him a duty where none existed before or would otherwise exist. *Levesque* v. *Levesque*, 99 N. II. 147, 149. However

we also believe that the effect of general insurance coverage by most motorists should be considered in determining whether the barrier preventing an unemancipated child from obtaining redress for the wrongs inflicted on him by the negligence of his parents should be removed. The fact that most parents have provided for payment by an insurer for the damages which might be assessed in an action against them or their estate by their unemancipated children is also a factor which decreases the likelihood that such an action will disrupt family harmony or deplete the family exchequer, another reason advanced against allowing such suits.

These considerations lead us to the conclusion that in a case where unemancipated children are suing the estate of their deceased parent to recover damages for injuries inflicted by his negligent operation of an automobile, there is no longer any basis for the application of a bar to their right of redress in the form of a court-created and imposed immunity or disability to sue.

If after thorough examination a prior judicial decision seems manifestly out of accord with modern conditions of life, it should not be followed as a controlling precedent. 37 Harv. L. Rev. 409, 414. Finding no supportable rationale upon which this judicially created exception to the ordinary rules of liability can be predicated, justice demands and reason dictates that a change be made from the previous holding in such a situation. See *Woods* v. *Lancet,* 303 N. Y. 349, 355; *Flagiello* v. *Pennsylvania Hospital,* 208 A. 2d 193, 205-208 (Pa. 1965); 48 Minn. L. Rev. 265, 303.

We hold that suits by or on behalf of unemancipated children for injury negligently inflicted in the operation of an automobile by a parent can be maintained against the estate of that deceased parent. The case of *Worrall* v. *Moran,* 101 N. H. 13, which holds the contrary is hereby overruled.

*Remanded.*

BLANDIN J., did not sit; the others concurred.