**Edward W. DOWNS, Guardian of the Estate of Marina DiMarco, a Minor,**

v.

**Thomas POULIN, Executor of the Estate of Lorraine P. DiMarco and George W. Goodblood.**

Supreme Judicial Court of Maine.

Jan. 11, 1966.

Philip S. Bird, Waterville, for plaintiff.

Roger A. Welch, Waterville, for Thomas Poulin.

Marden, Dubord, Bernier & Chandler, by Bruce W. Chandler, Waterville, for George W. Goodblood.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, SULLIVAN and RUDMAN, JJ.

RUDMAN, Justice.

On report. This is a Motion for Summary Judgment filed by the Defendant, Thomas Poulin, Executor of the estate of Lorraine P. DiMarco, reported to the Law Court upon the following agreed statement of facts:

"On February 6, 1964, Marina DiMarco, age nine, was living with her mother, Lorraine P. DiMarco, in Fairfield Center, Maine. On that date, while allegedly taking Marina to school at Mount Merici Academy in Waterville, Maine, a head on collision occurred between the automobile operated by Lorraine, in which Marina was sitting in the front seat as the only passenger, and a truck operated by George W. Goodblood. After the accident Lorraine was in the hospital until her death on March 1, 1964. Marina DiMarco was severely injured as a result of the accident. This action was brought July 15, 1964, by the Guardian of the unemancipated minor, Marina DiMarco, against the estate of her late mother, Lorraine DiMarco, and against George W. Goodblood for damages arising from injuries sustained by the minor allegedly as a result of the negligence of the mother and as a result of the negligence of George W. Goodblood, or as a result of the negligence of either or both."

The underlying question for decision is whether an unemancipated minor child can maintain an action against a parent for

bodily injuries caused by the negligence of the parent.

We are not aware of a common law rule that an unemancipated child could not maintain an action against his parent for damages for personal injuries as a result of the parent's ordinary negligence. "But there is substantial decisional authority (commencing with Hewlett v. George, 68 Miss. 703, 9 So. 885, 13 L.R.A. 682) that it is not permitted, on the theory that it is disruptive of the family peace, destructive of the enforcement of discipline, and therefore against public policy. We recognize the wisdom of these rulings as the state and society are vitally interested in the integrity of, and harmony in, the family." Briggs v. City of Philadelphia, 112 Pa.Super. 50, 170 A. 871, 872. Among the jurisdictions approving this rule are: Luster v. Luster, 299 Mass. 480, 13 N.E.2d 438; Oliveria v. Oliveria, 305 Mass. 297, 298, 25 N.E.2d 766; Norfolk Southern Railroad Co. v. Gretakis, 162 Va. 597, 174 S.E. 841; Matarese v. Matarese, 47 R.I. 131, 131 A. 198; Castellucci v. Castellucci, 188 A.2d 467 (R.I.); Sorrentino v. Sorrentino, 248 N.Y. 626, 162 N.E. 551; Cannon v. Cannon, 287 N.Y. 425, 40 N.E.2d 236; Hastings v. Hastings, 33 N.J. 247, 163 A.2d 147; Reingold v. Reingold, 115 N.J.L. 532, 181 A. 153; McKelvey v. McKelvey, 111 Tenn. 388, 77 S.W. 664, 64 L.R.A. 991; Ball v. Ball, 73 Wyo. 29, 269 P.2d 302; Villaret v. Villaret, 83 U.S.App. D.C. 311, 169 F.2d 677; Schneider v. Schneider, 160 Md. 18, 152 A. 498; Roller v. Roller, 37 Wash. 242, 79 P. 788, 68 L.R.A. 893; Smith v. Smith, 81 Ind.App. 566, 142 N.E. 128; Taubert v. Taubert, 103 Minn. 247, 114 N.W. 763; Turner v. Carter, 169 Tenn. 553, 89 S.W.2d 751; Smith v. Henson, 214 Tenn. 541, 381 S.W.2d 892; Badigan v. Badigan, 9 N.Y.2d 472, 215 N.Y.S. 2d 35, 174 N.E.2d 718; Pullen v. Novak, 169 Neb. 211, 99 N.W.2d 16; Small v. Morrison, 185 N.C. 577, 118 S.E. 12, 31 A.L.R. 1135; Mesite v. Kirchstein, 109 Conn. 77, 145 A. 753; Traczyk v. Connecticut Company et al., 24 Conn.Sup. 382,

190 A.2d 922; Shaker v. Shaker, 129 Conn. 518, 29 A.2d 765; Kelly v. Kelly, 158 S.C. 517, 155 S.E. 888; Maxey v. Sauls, 242 S.C. 247, 130 S.E.2d 570; Brumfield v. Brumfield, 194 Va. 577, 74 S.E.2d 170; Redding v. Redding, 235 N.C. 638, 70 S.E. 2d 676; Ownby v. Kleyhammer, 194 Tenn. 109, 250 S.W.2d 37; Baker v. Baker, 364 Mo. 453, 263 S.W.2d 29; Smith v. Smith, 205 Or. 286, 287 P.2d 572; Tucker v. Tucker, 395 P.2d 67 (Okl.); Chaffin v. Chaffin, 239 Or. 374, 397 P.2d 771.

The great weight of authority, unquestionably sustains the proposition that an unemancipated minor child cannot sue his parent for the negligent act of such parent causing the child to suffer personal injuries.

This principle was touched upon in Skillin v. Skillin, 130 Me. 223, 225, 154 A. 570, in which the court said:

"The right of the plaintiff to recover depends on the ordinary rules governing liability for negligence, and *on whether or not she was of age and emancipated.*" (Emphasis supplied)

The New Hampshire Court in Rines v. Rines, 97 N.H. 55, 80 A.2d 497, 498 said:

"We interpret this as meaning that the Maine law is in accord with the great weight of authority in other common law states and forbids suits between parent and child under such circumstances as are before us here."

In 67 C.J.S. Parent and Child § 61b(2), p. 787, we find the following rule:

"Generally speaking, an unemancipated minor child has no right of action against a parent or a person standing in loco parentis for the tort of such parent or person unless a right of action is authorized by statute, and the child may not, even after reaching majority, maintain an action for a tort committed by the parent while the child was an unemancipated minor.

\* \* \*" Ibid., 39 Am.Jur., Parent and Child, §§ 89, 90.

It is said by Cooley on Torts, 4th Ed. § 174, under the title of "Wrongs to Child":

"A minor child has no civil remedy against its parent, or either of them, \* \* \* for injuries resulting from negligence." See Matarese v. Matarese, supra, and cases cited.

In the formal relationship of a parent and child, it is likely that circumstances may arise resulting in some injury to the child, which injury may be caused by the negligence of the parent.

In the instant case, the parent was in the performance of a parental duty in providing transportation for the child to the school where she was enrolled as a student, and should not be subject to an action by the child for an injury sustained in the course of the parent's performance of a parental duty.

In Cannon v. Cannon, supra, facts comparable to the case at bar, the court said:

"In the case now before us, \* \* \* we deal with that natural kinship between parent and child which involves legal duties peculiar to that relationship, and as to which both reason and authority dictate our adherence, \* \*.

"The law requires of parents that they provide care, maintenance and guidance for their unemancipated minor child. To that end they are entitled to his custody. Such duties and rights may be enforced by legal process. Thus has the law recognized in the family something more than a social unit, something more practical than a spiritual concept. It has sanctioned the family relationship—particularly the relationship of parent and child—as the basis for regulating those reciprocal obligations between parent and child which may be the subject of legal enforcement.

"In the process of rearing a child and the fulfillment of the legal duties of care, maintenance and guidance, the conduct of the parents toward the child is of necessity affected by the parental relation. We know that family unity is not created by law. But, as we have seen, the law does not fail to recognize family unity as a factor in human conduct and relationship. As to the child—what he may expect from his parents and what he owes to them as a matter of filial duty differ widely from his rights and duties in his relations to those not in loco parentis. As to the parents—the law which imposes upon them the duty to support and discipline a minor child, and to prescribe a course of conduct designed to promote his health, education and recreation, accords to the parents a wide discretion. In the exercise of that discretion and the performance of duties imposed by law through no choice by the parents, they are held to no higher standard of care than the measure of their own physical, mental and financial abilities to provide for the well-being of their child. Lack of means, physical weakness or mental incapacity may cause parents to tolerate conditions in the family home which are unsafe and which might afford a basis for liability to one coming to the premises as an invitee or licensee. Not yet, however, have our courts granted an unemancipated child—whom the law decrees to be a member of that household—the right to hold his parents in damages for unintended personal injuries resulting from such conditions. Indeed, if within the wide scope of daily experiences common to the upbringing of a child a parent may be subjected to a suit for damages for each failure to exercise care commensurate with risk— for each injury caused by inattention, unwise choice or even selfishness—a new and heavy burden will be added to parenthood.

"Take for example the instant case: we may assume that the infant plaintiff's presence in his father's automobile, then driven by his mother, was not unrelated to the fact that he was the child of the owner and driver of the car; nor was his presence unrelated to the natural and legal duty of his parents to furnish him with care and with opportunities for recreation. True, he was a passenger but he was there, not as an invitee but as a member of the family, entitled to his parents' care. As in the constant succession of daily experiences which were shared in their family life the child's position as a passenger in the automobile was inextricably related to his position as a member of that family, so the parents' duties, as the owner of the car and as the operator, were inextricably related to their natural and legal duties toward their unemancipated child."

In this State our Legislature has authorized civil actions between husband and wife in specific instances, 19 M.R.S.A. § 166, yet, has not authorized actions of negligence between them.

██ The parental immunity rule in this State is analogous to the rule governing actions between husband and wife, except as provided by statute. Abbott v. Abbott, 67 Me. 304, 309; Hobbs v. Hobbs, 70 Me. 383; Libby v. Berry, 74 Me. 286, 289; Atwood v. Higgins, 76 Me. 423, 426; Sacknoff v. Sacknoff, 131 Me. 280, 282, 161 A. 669; Callow v. Thomas, 322 Mass. 550, 78 N.E.2d 637, 638; Brawner v. Brawner, 327 S.W.2d 808, 812, (Mo.).

In Luster v. Luster, supra, the court said:

"Among the multitude of personal injury cases which fill our own reports no case of this kind has been found, nor have we discovered that such cases have ever been entertained in England. But beginning in 1891 and continuing to the present an overwhelming weight of authority has been built up in this country against the maintenance of such actions on grounds of public policy. It is also generally held that similar actions will not lie by a parent against his minor child. * * * Although the relation of husband and wife at common law does not furnish a perfect analogy to that of parent and minor child, yet it seems significant that notwithstanding the statutes which have been passed to enable the two spouses to stand before the law as separate individuals with substantially equal rights, our Legislature still refuses to authorize actions at law between them. * * * The reason for this would seem to lie in views of public policy which are equally applicable as between parent and minor child. * * *"

The jurisdictions sanctioning actions in cases somewhat similar to the instant case are a decided minority. Dean v. Smith, 106 N.H. 314, 211 A.2d 410; Brennecke v. Kilpatrick, 336 S.W.2d 68 (Mo.); Palcsey v. Tepper, 71 N.J.Super. 294, 176 A.2d 818; Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193; (See obiter dictum in Parks v. Parks, 390 Pa. 287, 135 A.2d 65). It is the law in the jurisdictions where rendered, nevertheless, we believe the principle of the majority decisions is sound.

In many of the cases cited by the plaintiff the facts are distinguishable from the facts in the instant case, such as willful, wanton, malicious or intentional misconduct, master and servant relationship, injuries sustained in course of parent's employment, all being acts foreign to the duty of support, or health, welfare and education of the child. Dunlap v. Dunlap, 84 N.H. 352, 150 A. 905, 71 A.L.R. 1055; Trevarton v. Trevarton, 151 Colo. 418, 378 P.2d 640; Borst v. Borst, 41 Wash.2d 642, 251 P.2d 149; Signs v. Signs, 156 Ohio St. 566, 103 N.E.2d 743; Nudd v. Matsoukas, 7 Ill.2d 608, 131 N.E.2d 525; Lusk v. Lusk, 113 W.Va. 17, 166 S.E. 538.

The agreed statement of facts is silent as to insurance, and whether there was insurance, in fact, is not material. Insurance was mentioned in argument and many of the cases cited by the plaintiff are impregnated with liability insurance. Most courts, however, seem to feel that the existence of insurance ought not to be given the effect of creating a cause of action where none existed before. We have consistently maintained that the existence of liability insurance is wholly immaterial and is prejudicial when introduced in the course of a trial in a negligence action.

We again make reference to the case of Skillin v. Skillin, supra, in which our court said:

"The right of the plaintiff to recover depends on the ordinary rules governing liability for negligence, and on whether or not she was of age and emancipated. *The fact of insurance cannot enlarge or restrict such right.*" (Emphasis supplied)

See also: Sawyer v. J. M. Arnold Shoe Co., 90 Me. 369, 371, 373, 38 A. 333; McCann v. Twitchell, 116 Me. 490, 492, 102 A. 740; Goodie v. Price, 125 Me. 36, 37, 130 A. 512; Ritchie v. Perry, 129 Me. 440, 152 A. 621; Beaulieu v. Tremblay, 130 Me. 51, 53, 153 A. 353; Trumpfeller v. Crandall, 130 Me. 279, 285, 155 A. 646; Poland v. Dunbar, 130 Me. 447, 449, 157 A. 381; Maxey v. Sauls, supra; Schneider v. Schneider, supra; Norfolk Southern Railroad Co. v. Gretakis, supra; Badigan v. Badigan, supra; Shaker v. Shaker, supra; Bulloch v. Boulloch, 45 Ga.App. 1, 163 S.E. 708; Rambo v. Rambo, 195 Ark. 832, 114 S.W.2d 468; Lund v. Olson, 183 Minn. 515, 237 N.W. 188; Brumfield v. Brumfield, supra; 19 A.L.R.2d page 435; Parks v. Parks, 390 Pa. 287, 135 A.2d 65, 73; Baker v. Baker, 364 Mo. 453, 263 S.W.2d 29.

"It is difficult to see how the fact, if it be a fact, that the defendant carried liability insurance covering this accident can impose a liability where none would otherwise exist. Aside from a certain incongruity in attempting to bend general rules of liability so that their application to particular instances shall depend upon the existence or absence of insurance against such liability, it would seem that insurance does not remove the fundamental objections to such an action as this. The proceeding is still in theory an adversary one, and for various reasons it may be such in fact. If it is not, then it becomes peculiarly liable to abuse through collusion. Other courts have said that the fact that the defendant parent is insured does not change the rule." Luster v. Luster, supra, at 483, 13 N.E.2d at 440 and cases cited.

The remaining question is plaintiff's contention that the modern and more enlightened view is to permit actions by minor children against the estate of a deceased parent for injuries sustained by the negligence of the deceased parent, and for authorities cites: Brennecke v. Kilpatrick, supra; Palcsey v. Tepper, supra; Parks v. Parks, supra; Johnson v. Peoples' First National Bank, 394 Pa. 116, 145 A.2d 716; Davis v. Smith, D.C., 126 F.Supp. 497 (affirmed 3rd Cir., 253 F.2d 286, applying Pennsylvania law); Vidmar v. Sigmund, 192 Pa.Super. 355, 162 A.2d 15; Dean v. Smith, supra. Such authorities are in the minority.

The plaintiff urges our consideration of the seriousness of the injuries sustained by the plaintiff. However, the seriousness of the injuries does not call for a relaxation of the rule. We know of no court which has ever recognized an exception to the rule based upon such a fact. As far as the basic cause of action is concerned, plaintiff must stand or fall upon the facts as they existed at the time of her injury. "She succeeds after death * * * to just such rights as existed before that time * * * but there must be some right in existence to survive. Here there was none." Abbott v. Abbott, supra. She had no cause of action during the life of her mother and the death of her mother does

not create a cause of action. To create, as suggested by the plaintiff, an exception to the rule by sanctioning action if the parent dies would open wide the door to permit unemancipated minors to file claims of all kinds sounding in tort against the estates of their parents. Further, we would be discriminating against children whose parents are living in favor of those whose parents are deceased.

The doctrine of parental immunity from actions based on ordinary negligence has long been the accepted rule in this State, and under the weight of authority a sound public policy forbids the maintenance of such an action. It must be conceded that it is not for the court, by sudden strokes of policy, to make innovations upon the established law. If the rule in such cases is, as the plaintiff contends, no longer suited to the times and should be dispensed with, the proper way to accomplish that end is prospectively by legislation and not retro-actively by judicial decree; then if the Legislature deems it wise to give unemancipated minors causes of action against their parents or estates, grounded upon the torts or negligence of their parents, it may do so, imposing such exceptions or conditions as it may deem appropriate.

The entry will be:

Motion for Summary Judgment, sustained.

Judgment for Defendant, Thomas Poulin, Executor of the Estate of Lorraine P. DiMarco.

Case remanded to the Superior Court for further proceedings as to Defendant, George W. Goodblood.

MARDEN, J., did not sit.

SULLIVAN, J., sat at argument but retired before the opinion was adopted.