Sandra HEBEL, Petitioner,

v.

Douglas HEBEL, as Natural Guardian and Next Friend of Dianne Hebel, a Minor, Respondent.

No. 839.

Supreme Court of Alaska.

Dec. 8, 1967.

Robert C. Erwin, of Hughes, Thorsness & Lowe, Anchorage, for petitioner.

William H. Jacobs, of Kay, Miller, Jacobs & Libbey, Anchorage, for respondent.

Before NESBETT, C. J. and DIMOND and RABINOWITZ, JJ.

OPINION

RABINOWITZ, Justice.

In this proceeding we are asked to resolve the question of whether an unemancipated minor may maintain an action for personal injuries caused by her parent's negligence.[1] In the superior court the mother of the injured child moved for summary judgment on the sole ground that an "unemancipated minor child cannot sue the parent for negligence." In denying petitioner's motion for summary judgment the trial court primarily relied on this court's decision in Cramer v. Cramer.[2] In that case we held, as a matter of first impression, that a wife could sue her husband for a personal tort committed while the parties were married.[3] By virtue of the case at bar, we are now presented with the second occasion in the history of this court in which questions involving intrafamily negligence actions call for resolution.[4]

The subject of parental immunity encompasses controversial, complex, and delicate issues. The doctrine has received exhaustive treatment in law reviews, treatises,

1. Suit was instituted by Douglas Hebel "as father and natural guardian" of Dianne Hebel, the minor child. It was alleged that the child was injured while a passenger in a car operated by her mother, Sandra Hebel, due to the latter's negligence. In her answer the mother asserted as an affirmative defense that:
The plaintiff is the husband of defendant and the minor child is the daughter of this defendant and by reason of this relationship the claim and this lawsuit should be dismissed.

2. 379 P.2d 95 (Alaska 1963). In the course of rendering his oral decision upon the summary judgment motion, the trial judge said in part:

"[I]t's really very hard to distinguish the rationale—to follow the rationale on Cramer—to prohibit—suits by children against their parents.

3. In our opinion in Cramer at 95, the precise question in dispute was characterized in the following manner: "May a woman sue her former husband for a personal tort committed while the parties were lawfully married and living together as husband and wife?"

4. We have determined to grant review under Rules 23 and 24, Rules of the Supreme Court of Alaska. In our opinion petitioner's showing has met the requirements of our rules governing petitions for review.

and opinions of numerous state courts. Generally the law review authors and treatise writers are extremely critical of the parental immunity doctrine and its concomitant disallowance of negligence actions on behalf of unemancipated minors.[5] On the other hand, the weight of judicial authority is clearly in favor of refusing the unemancipated minor a remedy for any injury inflicted through the negligence of the minor's parents.[6]

While fully cognizant of judicial antipathy to the allowance of suits by unemancipated minors against their parents, we are persuaded that on the facts of this record the minor child should be granted a remedy for any injuries sustained.[7]

In Ranson v. Haner[8] we said we would not be bound by the mere weight of judicial precedent but rather by the rule which embodies the more persuasive reasoning. We adhere to the views expressed in this prior decision and in so doing have determined that the more persuasive reasoning favors allowance of this negligence action by the unemancipated minor. To a large extent today's decision was foreshadowed by our holding in *Cramer*[9] which allowed intraspousal negligence actions. Although our decision in *Cramer* involved, to some extent, construction of our Married Women's Statutes, we also relied upon the policy rationale of two, then recent, decisions of the courts of California in which the doctrine of intraspousal immunity for personal tort actions was abolished.[10]

---

5. See 1 Harper & James, The Law of Torts § 8.11 (1956); 2 Harper & James, The Law of Torts § 13.4 (1956); Prosser, Law of Torts § 116 (3d ed. 1964); E. Akers & W. Drummond, Tort Actions Between Members of the Family-Husband & Wife-Parent & Child, 26 Mo.L. Rev. 152 (1961) [hereinafter cited as Akers & Drummond]; W. McCurdy, Torts Between Persons in Domestic Relation, 43 Harv.L.Rev. 1030 (1930) [hereinafter cited as McCurdy]. See also the exhaustive listing of authorities cited in Judge Jacobs' dissenting opinion in Hastings v. Hastings, 33 N.J. 247, 163 A.2d 147, 151–152 (1960).

6. Downs v. Poulin, 216 A.2d 29, 30 (Me. 1966); Teramano v. Teramano, 6 Ohio St.2d 117, 216 N.E.2d 375 (1966); Capps v. Smith, 263 N.C. 120, 139 S.E.2d 19 (1964); Tucker v. Tucker, 395 P.2d 67 (Okl.1964); Chaffin v. Chaffin, 239 Or. 374, 397 P.2d 771, 774–775 (1964); Castellucci v. Castellucci, 96 R.I. 34, 188 A.2d 467, 469 (1963); Maxey v. Sauls, 242 S.C. 247, 130 S.E.2d 570, 571–572 (1963); Badigian v. Badigian, 9 N.Y.2d 472, 215 N.Y.S.2d 35, 174 N.E.2d 718, 719 (1961); Hastings v. Hastings, 33 N.J. 247, 163 A.2d 147, 148–149 (1960); DeLay v. DeLay, 54 Wash.2d 63, 337 P.2d 1057, 1058 (1959).

   See also authorities collected in Annot., 19 A.L.R.2d 423, 439–42 (1951), and in Akers & Drummond, supra note 5, at 183.

7. The depositions which were made part of the motion for summary judgment dis-

close that at the time the accident occurred the child was six years old. Just prior to the accident respondent had just gotten off work, picked up the child at the babysitter's, and was proceeding toward home with the child located in the front seat of Mrs. Hebel's automobile. The record also discloses the existence of liability insurance.

8. 362 P.2d 282, 287 (Alaska 1961).

9. 379 P.2d 95 (Alaska 1963).

10. We cited Self v. Self, 58 Cal.2d 683, 26 Cal.Rptr. 97, 101, 376 P.2d 65, 69 (1962), where the court said:

   [T]he contention that the rule is necessary to maintain conjugal harmony * * * is illogical and unsound. It would not appear that such assumed conjugal harmony is any more endangered by tort actions than by property actions—yet the latter are permitted. For these reasons alone the old common law rule should be abandoned.

   Also cited was Klein v. Klein, 58 Cal. 2d 692, 26 Cal.Rptr. 102, 376 P.2d 70 (1962), where the court considered and discounted "as dubious, unsound and not borne out by judicial experience", some of the reasons advanced in support of the intraspousal bar doctrine. Specifically rejected was the argument that because of the possibility of insurance, collusion, fraud, and perjury would be encouraged by allowance of suits between spouses.

Since this is a question of first impression in our jurisdiction, we consider it appropriate to discuss briefly the historical antecedents of the parental or family immunity doctrine, as well as judicial precedents in this area.

At early common law in matters concerning property, there was no bar to actions between parents and minor children.[11] As to a minor's suit involving a personal tort action based on the negligence of the parent, it appears that there are no reported early English common law decisions on the subject.[12]

American precedent begins in 1891 with the case of Hewlett v. George [13] where the family immunity doctrine was first announced. There the Mississippi court held that a minor child could not maintain a false imprisonment action against her mother for maliciously confining her in an insane asylum. In reaching this result the court cited no authority, basing its decision on the rationale that,

> The peace of society * * * and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent.[14]

The Hewlett decision was then followed by the Tennessee supreme court in McKelvey v. McKelvey [15] and by the Washington court in Roller v. Roller.[16] In the Tennessee case the court denied the minor the right to sue her father and stepmother for cruel and inhuman treatment. In the Washington case the court barred the minor's suit against her father who had raped her. In barring the action, the Washington court expressed the fear that once such causes of actions were allowed "there is no practical line of demarcation which can be drawn." The Hewlett, McKelvey, and Roller decisions "constitute the great trilogy upon which the American rule of parent-child tort immunity is based." [17]

From this base the family immunity doctrine, after a relatively slow start,[18] came to be applied almost uniformly by those jurisdictions which have ruled on the question, to bar negligence actions between an unemancipated minor and his parents.[19] We consider it pertinent to discuss briefly the many exceptions and qualifications to the family immunity doctrine before explaining our rejection of the doctrine in the case at bar.

It is firmly established that the emancipated child may sue the parent, and the parent may sue the emancipated child, for negligent wrongs,[20] and that an unemanci-

11. Prosser, Law of Torts § 116, at 886 (3d ed. 1964); Akers & Drummond, supra note 5; McCurdy, supra note 5.

12. Prosser, Law of Torts § 116, at 886 (3d ed. 1964) (footnotes omitted). The author states:
    Although there were no old decisions, the speculation on the matter has been that there is no good reason to think that the English law would not permit actions for personal torts as well, subject always to the parent's privilege to enforce reasonable discipline against the child; and there are decisions in Canada and Scotland holding that such an action will lie.
    See also Akers & Drummond and McCurdy, supra note 5.

13. 68 Miss. 703, 9 So. 885, 13 L.R.A. 682 (1891).

14. 9 So. 885, 887 (1891).

15. 111 Tenn. 388, 77 S.W. 664, 64 L.R.A. 991 (1903).

16. 37 Wash. 242, 79 P. 788, 68 L.R.A. 893 (1905).

17. Akers & Drummond, supra note 5, at 182.

18. See discussion in Dunlap v. Dunlap, 84 N.H. 352, 150 A. 905, 71 A.L.R. 1055 (1930).

19. See authorities cited supra note 6.

20. Glover v. Glover, 44 Tenn.App. 712, 319 S.W.2d 238 (1958); Wood v. Wood, 135 Conn. 280, 63 A.2d 586 (1948); Groh v. W. O. Krahn, Inc., 223 Wis. 662, 271 N.W. 374 (1937); Bulloch v. Bulloch, 45 Ga.App. 1, 163 S.E. 708 (1932); Taubert v. Taubert, 103 Minn. 247, 114 N.W. 763 (1908).

pated minor child may sue his parents for his property.[21] There are authorities which have permitted an unemancipated minor to maintain an action for personal injuries willfully or intentionally inflicted;[22] authorities which have allowed suits where the injuries were caused by unintentional but wilful, reckless, or grossly negligent conduct;[23] and authorities which have held that the parental immunity rule does not prohibit a negligence action by an unemancipated minor against the estate of his deceased parent.[24] Where the special circumstance of a carrier-passenger relationship existed between the minor and the parent, suit has been allowed.[25] Similarly, when a master-servant relationship is present, the courts have allowed the action.[26] And where the parent was not acting in a parental capacity but rather in his business or vocational capacity, suit has been allowed.[27] Thus, it is apparent that there exists an ever increasing number of judicially fashioned qualifications and exceptions to the parental immunity doctrine.[28]

As to the bases for the parental immunity doctrine in regard to ordinary negligence actions, the courts on various occasions have advanced the following explanations: Allowance of such causes of action would deplete the family exchequer;[29] would encourage fraud and collusion;[30] would disrupt domestic tranquility;[31] and would interfere with parental care, discipline, and control.[32] Additionally, some courts have analogized from the intraspousal immunity doctrine in adopting the rule of parental immunity.[33]

21. 1 Harper & James, Law of Torts § 8.11, at 647 (1956).

22. Brown v. Selby, 206 Tenn. 71, 332 S.W. 2d 166 (1960); Mahnke v. Moore, 197 Md. 61, 77 A.2d 923; Cannon v. Cannon, 287 N.Y. 425, 429, 40 N.E.2d 236, 238 (1942); Treschman v. Treschman, 28 Ind.App. 206, 61 N.E. 961 (1901).

23. Leggett v. Leggett, 216 N.Y.S.2d 781 (Sup.Ct.1961); Nudd v. Matsoukas, 7 Ill. 2d 608, 131 N.E.2d 525, 526 (1956); Emery v. Emery, 45 Cal.2d 421, 289 P. 2d 218 (1955); Cowgill v. Boock, 189 Or. 282, 218 P.2d 445, 19 A.L.R.2d 405 (1950).

24. Davis v. Smith, 253 F.2d 286 (3d Cir. 1958); Dean v. Smith, 106 N.H. 314, 211 A.2d 410, 413 (1965); Brennecke v. Kilpatrick, 336 S.W.2d 68, 69–72 (Mo. 1960); Vidmar v. Sigmund, 192 Pa. Super. 355, 162 A.2d 15 (1960).

25. Worrell v. Worrell, 174 Va. 11, 26–27, 4 S.E.2d 343, 349 (1939), where the court held the parent liable to his daughter for injuries received while she was a passenger on a bus owned by the parent and negligently operated by the parent's employee. The court said:
Here the child occupied the position of passenger of a common carrier, the relation of parent and child being purely incidental * * *. [T]he action was brought against the father * * * as a common carrier, not against the father for violation of a moral or parental obligation in the exercise of his parental authority.

26. Dunlap v. Dunlap, 84 N.H. 352, 150 A. 905, 71 A.L.R. 1055 (1930).

27. Signs v. Signs, 156 Ohio St. 566, 103 N.E.2d 743 (1952); Borst v. Borst, 41 Wash.2d 642, 251 P.2d 149 (1952); Lusk v. Lusk, 113 W.Va. 17, 166 S.E. 538 (1932).

28. In addition to the authorities heretofore referred to in regard to exceptions and qualifications of the rule, see Annot., 19 A.L.R.2d 423 (1951).

29. Roller v. Roller, 37 Wash. 242, 79 P. 788, 68 L.R.A. 893 (1905).

30. Hastings v. Hastings, 33 N.J. 247, 163 A.2d 147, 150 (1960).

31. Nudd v. Matsoukas, 7 Ill.2d 608, 131 N.E.2d 525, 531 (1956).

32. Rodebaugh v. Grand Trunk W. R.R., 4 Mich.App. 559, 145 N.W.2d 401, 403 (1966).

33. Prosser, Law of Torts § 116, at 886 (3d ed. 1964). It has also been explained that the allowance of the suit would be futile since the defendant might inherit the amount recovered. Roller v. Roller, 37 Wash. 242, 79 P. 788, 68 L.R.A. 893 (1905). We are not persuaded that this reason is sufficient to outweigh the necessity of compensating the injured minor for his injuries. See Prosser, supra at 887; McCurdy, supra note 5, at 1073 where the author states:
It has been suggested that if a parent is compelled to pay damages to a minor child he would, as next of kin of the

As to reliance upon intraspousal immunity doctrine, our decision in Cramer v. Cramer [34] disposes of this basis for the parental immunity rule. Concerning the depletion of the family exchequer rationale, the New Hampshire court in Briere v. Briere [35] made the following apposite comments:

> As to the depletion of the family exchequer, the court in the *Dunlap* case summarily rejected this argument as having no substantial weight and said that it ignored 'the parent's power to distribute favors as he will, and leaves out of the picture the depletion of the child's assets of health and strength through the injury.' Id., 84 N.H. 361, 150 A. 909. To this may be added today's reality that if the father has means, he will almost inevitably carry insurance, and if he has not, the chances of anyone bringing suit for the child are remote. See Dean v. Smith, 106 N.H. 314, 317–318, 211 A.2d 410. We agree that the existence of insurance should not impose a duty upon a parent where none existed before. Dean v. Smith, supra. However, as a practical matter, the prevalence of insurance cannot be ignored in determining whether a court should continue to discriminate against a class of individuals by depriving them of a right enjoyed by all other in-

dividuals. Dunlap v. Dunlap, supra; Dean v. Smith, supra. [36]

In regard to the fraud-collusion-perjury argument, we are of the opinion that it does note warrant denial of a remedy to the child. Concerning this basis for the parental immunity rule, Judge Fuld, in his dissenting opinion in Badigian v. Badigian, [37] wrote:

> Since the insurer is the real defendant, it has been said that there is danger of fraud and collusion between parent and child. One may not, of course, deny the hazard, but such a danger, being present in all liability insurance cases, furnishes reason not for denial of a cause of action, but for added caution on the part of court and jury in examining and assessing the facts. The danger is precisely the same when the injury is to a child who has attained 21 or to a brother or sister or, to a less degree, to a friend. [38]

We are of the further view that our holding in Cramer v. Cramer [39] disposes of the fraud-collusion-perjury argument advanced in support of parental immunity. In *Cramer* we rejected a parallel argument in support of adoption of intraspousal immunity. [40] This brings us to the frequently urged ground that allowance of the action by the unemancipated minor would be disruptive of family harmony. We are of the opinion

---

child, reacquire the amount so paid in the extent of the child's death during minority, and that, therefore, he should not be compelled to pay damages which he might later on get back. Assuming the validity of the basis of this suggestion as a fact, it is difficult to see why the conclusion follows from the mere possibility, or why, if it does, this reason should not apply also to improper conduct in respect to property.

34. 379 P.2d 95 (Alaska 1963). We also note that we do not agree that the situations are analogous; rather, under the common law, status of an unemancipated minor is clearly distinguishable from that of the husband-wife relationship.

35. 107 N.H. 432, 224 A.2d 588, 590 (1966).

36. The subject of insurance will be treated subsequently.

37. 9 N.Y.2d 472, 215 N.Y.S.2d 35, 174 N.E.2d 718, 723 (1961).

38. See also Note, Tort Liability Within the Family Area—A Suggested Approach, 51 Nw.U.L.Rev. 610, 615 (1966); Balts v. Balts, 273 Minn. 419, 142 N.W.2d 66, 74 (1966); Briere v. Briere, 107 N.H. 432, 224 A.2d 588, 591 (1966); Worrell v. Worrell, 174 Va. 11, 4 S.E.2d 343 (1939); Dunlap v. Dunlap, 84 N.H. 352, 150 A. 905, 908 (1930).

39. 379 P.2d 95 (Alaska 1963).

40. See note 11 supra.

that our decision in *Cramer*[41] points to rejection of this argument for there we were unpersuaded by a similar argument which was advanced in regard to disruption of conjugal harmony. *Goller v. White*[42] is one of the two cases in which the doctrine of parental immunity for ordinary negligence actions was abolished. Under factual circumstances similar to those of the case at bar, the Wisconsin court had the following to say about the family harmony argument:

> 1 Harper and James, Law of Torts, p. 650, § 8.11, advocates allowing the maintenance of an action in tort against a parent or a child in every case 'in which it is reasonably clear that the domestic peace has already been disturbed beyond repair or where by reason of the circumstances it is not imperiled, and where the reasonableness of family discipline is not involved.' The authors point out that one situation in which family harmony is not thereby disturbed arises where there is liability insurance coverage. * * *

This court, however, has refused to consider the existence of liability insurance a sufficient basis for departing from the rule * * *. Nevertheless, we consider the wide prevalence of liability insurance in personal injury actions a proper element to be considered in making the policy decision of whether to abrogate parental immunity in negligence actions. This is because in a great majority of such actions, where such immunity has been abolished, the existence of insurance tends to negate any possible disruption of family harmony and discipline.

We are in accord with the *Goller* court's analysis of the domestic tranquility factor.[43]

41. In Cramer v. Cramer, 379 P.2d 95 (Alaska 1963), we cited Self v. Self, 58 Cal.2d 683, 26 Cal.Rptr. 97, 376 P.2d 65, 69 (1962), where the court found the conjugal harmony rationale of the intraspousal immunity rule to be totally unpersuasive. See note 11 supra.

42. 20 Wis.2d 402, 122 N.W.2d 193, 197 (1963). In Briere v. Briere, 107 N.H. 432, 224 A.2d 588, 591 (1966), New Hampshire became the second jurisdiction to abolish the doctrine of parental immunity in regard to ordinary negligence actions. The court said the following in regard to the domestic tranquility argument:
> We further believe that family peace and parental authority, in the overwhelming majority of cases, will be threatened less by an unemancipated minor's suit for tort against a parent, where the latter is generally protected from loss by insurance, than by an action for breach of contract or to enforce property rights where the parent would ordinarily have to pay a verdict from his own pocket. See Prosser, The Law of Trots, s. 101, pp. 677–678 (1955); I Harper & James, The Law of Torts, s. 8.11, pp. 649–650 (1956); II Harper & James, The Law of Torts, s. 13.4, p. 767 (1956).

The court in Balts v. Balts, 273 Minn. 419, 142 N.W.2d 66, 73 (1966), reached a similar conclusion. See also Note, Tort Liability Within the Family Area—A Suggested Approach, 51 Nw.U.L.Rev. 610, 613–14 (1956) (footnotes omitted), where the author writes:
> Although litigation between members of the family is inconsistent with domestic tranquility, if an action is actually brought the harmony and repose of the family undoubtedly have already been disturbed. While an adversary proceeding in open court might increase the family discord, it would appear that this disturbance is primarily wrought by the conduct of the defendant. To allow the tort-feasor to plead that the harmony of his home should not be destroyed seems unreasonable. It would also appear that family harmony could be controlled more effectively through positive rather than negative means. Thus, although it is possible that the disallowance of intrafamily lawsuits may have a long-range effect in preserving domestic tranquility, it offers only slight justification for the immunity doctrine.

43. See also Judge Fuld's dissenting opinion in Badigian v. Badigian, 9 N.Y.2d 472, 215 N.Y.S.2d 35, 174 N.E.2d 718, 723 (1961), where he states:
> The real reasons for the persistence of a doctrine must be sought elsewhere. It is said that to recognize a right of action in the child would invite an unseemly antipathy between the law within the family and the law without, and that there is something indecent in the spectacle of a child suing his father, with his mother as guardian ad

The final argument advanced by the authorities which support the parental immunity rule is that of the necessity of the maintenance of parental discipline. In Rodebaugh v. Grand Trunk W. R.R.[44] the court said:

Even the contemporary cases which have carved broad inroads into the immunity rule have recognized that there is justification for parental immunity in a certain area. Many of the cases give a wide variety of reasons, but the only reason that passes the test of critical examination is the natural parental right and obligation of care, discipline and control over minor children.[45]

In rejecting parental care, discipline, and control as a reason for denying the minor child a remedy on the facts before us, we are of the opinion that the reasoning of the Goller v. White[46] and Briere v. Briere[47] courts is more convincing and more in accord with our conception of a just resolution of the question.

We are of the opinion that Judge Fuld's views are particularly pertinent here. In his dissent in Badigian v. Badigian[48] he stated:

The problem, in short, comes to this: A child is seriously injured by his father's

careless operation or maintenance of his automobile. As the law now stands, the judgment recovered against the parent is more than likely, in the vast majority of cases, to be paid by an insurer. If the crippled child may have the benefit of this insurance, a fund will be supplied the family to provide for him. If the fund is cut off, cripple as well as parent will have to stagger beneath the load. To tell them that the pains must be endured for the peace and welfare of the family is something of a mockery.[49]

On the balance we believe that the scales should be weighed in favor of affording the injured child a remedy in this case. In reaching this decision we are not unaware of the pivotal role the family has assumed, and will continue to play, in our culture. Nor are we oblivious to the continuing need for parental discipline and control within the family grouping. And we are fully cognizant that there are large areas of activities within the family sphere involving parental discipline, care, and control which should and must remain free from judicial intrusion. In Goller v. White[50] the Supreme Court of Wisconsin, in holding that the parental immunity rule should be abro-

litem. But, as I have already shown, the law suffers many such 'spectacles' under the numerous exceptions to the family immunity doctrine.

44. 4 Mich.App. 559, 145 N.W.2d 401, 403 (1966).

45. For further cogent statements of this rationale, see Chaffin v. Chaffin, 239 Or. 374, 397 P.2d 771, 774–775 (1964); Hastings v. Hastings, 33 N.J. 247, 163 A.2d 147, 149–150 (1960); Borst v. Borst, 41 Wash.2d 642, 251 P.2d 149, 156 (1952); Cannon v. Cannon, 287 N.Y. 425, 40 N.E.2d 236, 238–239 (1942). See also the discussion of this subject in McCurdy, supra note 5, at 1074–77.

46. 20 Wis.2d 402, 122 N.W.2d 193 (1963).

47. 107 N.H. 432, 224 A.2d 588 (1966).

48. 9 N.Y.2d 472, 215 N.Y.S.2d 35, 174 N.E.2d 718, 724 (1961).

49. See also Borst v. Borst, 41 Wash.2d 642, 251 P.2d 149, 153–154 (1952), where the court said:

A second reason frequently advanced in support of the immunity rule is that actions by children against their parents tend to undermine parental authority and discipline. * * * The field of parental control and discipline covers such matters as the maintenance of the home, chastisement, and no doubt other activities which need not here be delineated. But when the parental activity whereby the child was injured has nothing to do with parental control and discipline, a suit involving such activity cannot be said to undermine those sinews of family life. And even if such a suit should tend to impair family discipline in some degree, that would not seem to call for application of the immunity rule any more than in cases where the child sues to enforce a property right.

50. 20 Wis.2d 402, 122 N.W.2d 193, 198 (1963).

gated, articulated two situations in which parental immunity would remain in force:

(1) where the alleged negligent act involves an exercise of parental authority over the child; and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care.

■ At this time we believe it unnecessary to attempt to define precisely what scope should be given to the doctrine of parental immunity. Rather, we limit our decision to the factual situation before us, and hold that the unemancipated minor has a right of action against her mother for personal injuries allegedly sustained as a result of the parent's negligent driving.[51]

We remain unpersuaded by the traditional explanations which have been proffered in favor of parental immunity. Analysis of them has convinced us that neither individually nor collectively do the arguments in support of the immunity rule outweigh the necessity of according the minor child a remedy for wrongful negligent injury to his person. And it is this factor of a negligent wrong that we believe to be of paramount significance. It appears to us illogical to sanction property actions between unemancipated minors and their children; to allow an action if the child happens to be emancipated; to permit an action if the parent inflicts intentional harm upon the child; or if that harm is inflicted through negligence characterized as gross or wanton; to permit an action should the child happen to be injured in the course of the parent's business or vocation; to permit an action if the parent is deceased; but, on the other hand, to deny the unemancipated child redress for his personal injuries when caused by the negligence of a living parent.

We are of the further view that although the existence of liability insurance does not create liability its presence is of considerable significance here.[52] To persist in adherence to family-harmony and parental-discipline-and-control arguments when there is automobile liability insurance involved is in our view unrealistic. If there is insurance there is small possibility that parental discipline will be undermined, or that the peace of the family will be shattered by allowance of the action.

The superior court's denial of petitioner's motion for summary judgment is affirmed.

---

51. Inherent in this determination is our belief that this is a problem that the judiciary must answer rather than the legislature, since the doctrine of parental immunity is a court-made rule. See Goller v. White, 20 Wis.2d 402, 122 N.W. 2d 193, 198 (1963); Briere v. Briere, 107 N.H. 432, 224 A.2d 588 (1966).

52. See Wick v. Wick, 192 Wis. 260, 212 N.W. 787, 790, 52 A.L.R. 1113 (1927), where Judge Crownhart wrote:

Times have changed. Practically no business is now carried on without insurance to protect the owner against his negligence whereby his employees may be damaged. Practically all owners of automobiles protect themselves in the same way. Certainly all prudent men should guard against liability in such cases. Should a man think less of his own flesh and blood than of his employees or the stranger on the highway? And if he is thoughtful enough to insure against misfortune due to his negligence to the public at large, must the court step in and deny the infant member of his family the same chance in life as is possessed by the public? I think not.